IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 21, 2003

## STATE OF TENNESSEE v. STEVEN SHELTON

**Direct Appeal from the Criminal Court for Greene County**
**No. 02CR014     James E. Beckner, Judge**

_____

**No. E2002-01720-CCA- R3-CD**
**July 31, 2003**
_____

The appellant, Steven Shelton, was convicted by a jury in the Greene County Criminal Court of theft of property valued $1000 or more but less than $10,000, a Class D felony. The trial court sentenced the appellant as a Range I standard offender to two years six months confinement in the Greene County Jail. On appeal, the appellant argues that the evidence was insufficient to support his conviction and that the trial court erred in denying alternative sentencing. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court. However, we remand to the trial court for the correction of the judgment of conviction to reflect the fine imposed by the jury.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed and Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT JR., JJ., joined.

Douglas L. Payne, Greeneville, Tennessee, for the appellant, Steven Shelton.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Cecil Mills, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

On April 8, 2002, the Greene County Grand Jury returned a one count indictment charging the appellant with theft of property over $1000. Subsequently, a trial was held on May 29, 2002.

At trial, Carl Forss testified that his grandfather, Dan Forss, purchased for him a Yamaha YZ250 "dirt bike." The dirt bike was kept in a shed outside the residence Carl Forss shared

with his grandparents. On November 11, 2001, the dirt bike was discovered missing. That same day, Carl Forss reported the missing dirt bike to the Greene County Sheriff's Department. Carl Forss testified that as of November 2001, the fair market value of the dirt bike was $4000. Subsequently, Dan and Carl Forss, in an attempt to locate the dirt bike, visited various motorcycle racing venues. On December 16, 2001, they went to the Dallas-Ricker Complex in Baileyton, Tennessee, where they observed what appeared to be the missing dirt bike. Carl Forss confronted T.J. Cutshall, who was in possession of the bike, and then called the sheriff's department. A deputy arrived, checked the dirt bike's serial numbers and registration, and determined that it was the dirt bike missing from the Forss's residence. Carl Forss testified that he never gave Cutshall or the appellant consent to control or deprive him of the dirt bike.

Dan Forss testified at trial that he was Carl Forss's grandfather and that Carl Forss lived with him. He further testified that he, Dan Forss, was the registered owner of the dirt bike which he had purchased for his grandson. He explained that his grandson was paying for it. Dan Forss also testified that he never gave permission for anyone else to exercise control over the dirt bike.

Terry Joe "T.J." Cutshall testified that he attended school with the appellant. Cutshall testified that in November 2001 he owned a Yamaha FZR600 motorcycle which he described as a "street bike" or "crotch rocket" that was in poor condition. He gave the street bike to the appellant in exchange for the appellant's dirt bike. At the time of the trade, Cutshall was sixteen-years-old. Cutshall testified that he traded bikes with the appellant because the dirt bike "[ran] good and I liked it." Cutshall testified that as part of the trade, "I had to make a receipt saying I had the bike before [the appellant] did so that if I got caught he wouldn't get in trouble for it." The receipt which was entered into evidence at trial noted, "I T.J. Cutshall, sold [the appellant] a YZ250 on Nov[ember] 19."

Cutshall testified that the appellant told him the dirt bike was stolen. Cutshall stated that after being approached by Carl Forss at the Dallas-Ricker Complex regarding the ownership of the dirt bike, he helped load the dirt bike into Carl Forss's truck. Cutshall related that he was subsequently questioned on several different occasions by Detective Roderick at the Greene County Sheriff's Department. Cutshall testified that he lied on each occasion except the last one. In his final statement, Cutshall told Detective Roderick that, although the trade occurred on November 31, 2001, the appellant instructed him to write "November 22" on the receipt.

Roy Treadway testified at trial that he was eighteen-years-old and had known the appellant for nine years. Treadway stated that he first saw the dirt bike at the appellant's house where the appellant allowed him to ride it. He later learned of the trade between the appellant and Cutshall. Treadway testified that although the appellant never told him how he obtained the dirt bike, the appellant informed him he had "put $2300 into it." Treadway related that he observed Cutshall with the dirt bike "[r]ight after Thanksgiving but before Christmas."

Detective Ralph W. Roderick of the Greene County Sheriff's Department testified that on November 11, 2001, he was assigned to investigate the report of a stolen dirt bike. Shortly thereafter, Cutshall was brought in for questioning and as a result of that questioning, a warrant was issued charging the appellant with "being in possession and control of the stolen motorcycle." On December 31, the appellant was questioned after being advised of his rights. He gave a written statement relating that:

> Sometime around the 19th of November, I bought a Yamaha motorcycle from T.J. Cutshall. This bike was the same bike as the picture Detective Roderick showed me. I gave him one thousand, eight hundred dollars for the bike. A month later, T.J. came over to my house and offered to trade his crotch rocket, an FZR600 for the Yamaha that I had bought from him. He offered his bike and one hundred dollars for the Yamaha 2000. I traded him but never collected the one hundred dollars. He gave me a title for the crotch rocket. He never told me where he got the Yamaha 2000 from. He signed a receipt for the Yamaha when he sold it to me.

Testifying on his own behalf at trial, the appellant maintained that he had purchased the YZ250 dirt bike from Cutshall for $1800 and had asked for and received a receipt. Approximately three weeks later, the appellant returned the dirt bike to Cutshall in exchange for Cutshall's FZR600 street bike and $100. The appellant denied that the dirt bike was stolen. The appellant testified that Treadway rode the dirt bike on a trail on the appellant's property one to two days after the bike was purchased. On cross-examination, the appellant denied asking Cutshall to lie about the date of the trade.

Based on the forgoing evidence, the jury found the appellant guilty of theft of property valued one thousand dollars or more but less than ten thousand dollars and fixed a fine in the amount of $500. As a result of his conviction, the appellant was sentenced as a Range I standard offender to two years and six months confinement in the Greene County Jail. On appeal, the appellant argues that the evidence was insufficient to support his conviction and that the trial court erred in denying alternative sentencing.

## II. Analysis

A. Sufficiency of the Evidence

On appeal, the appellant argues that the trial court erred in denying his motion for judgment of acquittal. This court has observed that "[t]he standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction." State v. Thompson, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000). Accordingly, we will address the appellant's complaint as a challenge to the sufficiency of the evidence.

When an appellant challenges the sufficiency of the convicting evidence, the standard of review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded to the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence was insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In order to sustain the appellant's conviction of theft of property over $1000, the State had to prove that the appellant, with the intent to deprive the owner of property, knowingly obtained or exercised control over the property without the owner's effective consent and that the value of the property was over $1000 but less than $10,000. Tenn. Code Ann. § 39-14-103, -105(3) (1997). The appellant contends that because the indictment alleges theft of property from Dan Forss and the evidence at trial showed that Carl Forss was the owner and only person entitled to possession of the stolen dirt bike, the evidence was not sufficient to support his conviction. The appellant asserts that "the jury was, in effect, asked to hear a case of theft which never took place as charged in the indictment or as a matter of fact."

We conclude that a reasonable trier of fact could find beyond a reasonable doubt that Dan Forss was an owner of the dirt bike. The record reflects that Dan Forss purchased the YZ250 dirt bike and that Carl Forss was "paying for it." Dan Forss testified that the title to the dirt bike was registered in his name. Clearly the jury, after hearing all testimony, believed that Dan Forss was an owner of the property and that the appellant, intending to deprive the owner of his property, knowingly exercised control over property worth in excess of $1000 without the owner's consent. Regardless, even if Carl Forss was found to have an interest in the dirt bike, it is not necessary to prove who, between the two, was the actual owner.[1] Both Carl and Dan Forss testified that neither had given permission for the appellant to have possession of the dirt bike.

The appellant next argues that "[t]he evidence before the jury which was unrefuted was that the appellant mistakenly believed that he was entitled to possession of the dirt bike." We disagree. The testimony clearly presented conflicting statements as to whether the appellant knew

---

[1] The Sentencing Commission Comments to Tennessee Code Annotated section 39-14-103 (1997) note that this section is primarily a generic theft statute. It punishes theft of property as defined in Tennessee Code Annotated section 39-11-106. Tennessee Code Annotated section 39-11-106(a)(26) (1997) defines "owner" as "a person, other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property, even though that possession or interest is unlawful and without whose consent the defendant has no authority to exert control over the property."

the bike was stolen. Conflicts in testimony produced at trial are to be resolved by the trier of fact and not this court. State v. Fox, 733 S.W.2d 116, 117 (Tenn. Crim. App. 1987). The jury discredited the appellant's testimony and instead chose to believe the State's witnesses. As we noted, this court will not reweigh or reevaluate the evidence. Bland, 958 S.W.2d at 659.

The appellant further argues that it is "unrefuted that there was no indication that the [appellant] had actually taken the bike from the Forss's residence." However, the State was not required to prove that the appellant entered the Forss's residence and took the dirt bike. Tennessee Code Annotated section 39-14-103 provides that, "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent."

We find that the evidence was more than sufficient for a reasonable trier of fact to conclude beyond a reasonable doubt that the appellant was guilty of theft of property.

B. Sentencing

The appellant contends that the trial court erred in denying him an alternative sentence. When an appellant challenges the length, range or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). However, this presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appellant to show that the sentence is improper. Tenn. Code. Ann. § 40-35-401, Sentencing Commission Comments.

In conducting our review, this court must consider (1) the evidence, if any, received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to the sentencing alternatives; (4) the nature and characteristics of the offenses; (5) any mitigating or enhancement factors; (6) any statements made by the appellant on his own behalf; and (7) the appellant's potential for rehabilitation treatment. Tenn. Code Ann. § 40-35-102 and -103 (1997), -210 (Supp. 2002); see also Ashby, 823 S.W.2d at 168.

The appellant was sentenced as a Range I standard offender, for which the applicable range for a Class D felony is two to four years. Tenn. Code Ann. § 40-35-112(a)(4) (1997). The presumptive sentence for Class D felonies is the minimum within the applicable range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If the trial court finds that such factors do exist, the court must start at the presumptive sentence, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). We note that there is no mathematical formula for valuating factors to calculate the appropriate sentence. State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). "Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record." Id. at 475-76.

In the instant case, the record reflects that the trial court complied with the statutory sentencing principles and procedures. The trial court considered the nature of the offenses, the arguments of counsel, the presentence report, and the testimony presented at trial and at sentencing, including the appellant's own testimony. Based upon this information, the trial court applied the following enhancement factors:

> (1) the appellant has a previous history of criminal convictions; and
>
> (8) the appellant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community.

Tenn. Code Ann. § 40-35-114 (1997).[2] The trial court also considered mitigating factor (1), that the appellant's criminal conduct neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1) (1997). While the trial court briefly considered mitigating factor (6), that the appellant because of youth lacked substantial judgment in committing the offense, the trial court concluded that, "[i]n this case, under the circumstances and with the history of being on probation and the violation of probation, I do not believe age is a determinative factor that should mitigate, having a history with the justice system just immediately prior to this offense." Tenn. Code Ann. § 40-35-113(6). Thereafter, the trial court sentenced the appellant to two years and six months in the Greene County Jail.

Probation must be considered for an appellant who is sentenced to serve eight years or less. Tenn. Code Ann. § 40-35-303 (1997). A standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). Regardless, the presumption in favor of alternative sentencing may be rebutted by "evidence to the contrary." State v. Lane, 3 S.W.3d 456, 462 (Tenn. 1999). The following considerations, set forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000). See also Ashby, 823 S.W.2d at 169.

Additionally, the sentence imposed should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purpose for which

---

[2] We note that the trial court relied on Tenn. Code Ann. § 40-35-114 (1997). The 2002 Amendments have now added enhancement factor (1) thereby renumbering former (1)-(22) as current (2)-(23). See Tenn. Code Ann. § 40-35-114, Amendments. However, for the purposes of this opinion, we will use the former designations applicable at the time of the appellant's sentencing.

the sentence was imposed. Tenn. Code Ann. § 40-35-103(2) and (4). The potential or lack of potential for the rehabilitation of the defendant should be considered in determining the length of the sentence or the sentence alternative. Tenn. Code Ann. § 40-35-103(5).

The appellant argues that the presumption of favorable candidacy for alternative sentencing was not refuted by the State and further, that the appellant has no history of repeated anti-social or lawless behavior and had not committed a serious offense. The appellant contends that his prospects of rehabilitation do not militate strongly in favor of incarceration. We disagree. As long as the trial court followed the statutory sentencing procedure and imposed a lawful sentence after giving due consideration and proper weight to the factors and principles as mandated by law, and if the trial court's findings are adequately supported by the record, then this court may not modify the sentence even if we would have preferred a different result. State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In this case, the trial court clearly outlined and explained the reasons for ordering confinement and denying probation. The trial court acknowledged that deterrence could not be a very significant consideration because the State did not provide proof as to the need for deterrence. However, the court found that measures less restrictive than confinement had recently been applied unsuccessfully to the appellant, noting that probation should be denied because "[the appellant] had just violated a probationary disposition on a vandalism charge, and was required to serve time for that violation just before this offense was committed." Additionally, he found that the jury, in order to convict, had to find that the appellant's testimony under oath was deliberately false. Accordingly, the trial court determined that probation should be denied and confinement imposed.

### III.  Conclusion

Based upon the foregoing, we affirm the judgment of the trial court. However, we note that the trial transcript reflects that after finding the appellant guilty, the jury recommended a fine of $500. The trial court accepted the jury's recommendation. The judgment of conviction does not reflect that any fine was imposed. Accordingly, we remand to the trial court for the correction of the judgment of conviction to include the $500 fine.

_____
NORMA McGEE OGLE, JUDGE