**Jennifer Lynn ALSIP et al.**

v.

**JOHNSON CITY MEDICAL CENTER et al.**

Supreme Court of Tennessee, at Knoxville.

May 4, 2006 Session.

June 29, 2006.

Gary E. Brewer and Leslie A. Muse, Morristown, Tennessee, for the appellants, Jennifer Lynn Alsip, Rebecca Dawn Alsip, and Geraldine Alsip.

Jeffrey M. Ward, Greeneville, Tennessee, for the appellees, Louis Modica, M.D., and Medical Education Assistance Corporation d/b/a ETSU Physicians and Associates.

Randall J. Phillips, Jackson, Tennessee, for Amicus Curiae, Tennessee Trial Lawyers Association.

Melanie M. Stewart, C. Michael Becker, Germantown, Tennessee, and James M. Beck, Philadelphia, Pennsylvania, for Amicus Curiae, Tennessee Defense Lawyers Association.

William B. Hubbard, Nashville, Tennessee, for Amicus Curiae, Tennessee Hospital Association.

David L. Steed and Jay N. Chamness, Nashville, Tennessee, for Amicus Curiae, Tennessee Medical Association.

## OPINION

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and CORNELIA A. CLARK, JJ. joined.

Pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure, we accepted this appeal to clarify the meaning of our holding in *Givens v. Mullikin*, 75 S.W.3d 383 (Tenn.2002), as it relates to a trial court's tailored discovery order in a medical malpractice lawsuit permitting ex parte communications between defense counsel and the decedent's non-party treating physicians. Carefully weighing public policy concerns and considering the case law on this issue from other jurisdictions, we hold that the trial court erred by issuing this order. Today we announce that such ex parte communications violate the implied

covenant of confidentiality that exists between physicians and patients and that public policy does not require the voidance of this covenant. This being the case, ex parte communications between the plaintiff's non-party physicians and defense attorneys are not allowed in the State of Tennessee. Accordingly, we affirm the judgment of the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

On August 27, 2000, Walter Alsip presented himself to the emergency room of Johnson City Medical Center after a four-day history of sore throat, ear ache, fever, and chills. Upon examination by a staff physician, Dr. Mark Wilkinson, Alsip was treated and released.

Alsip returned to the emergency room the next day with worsening symptoms. Dr. Wilkinson ordered a CT scan, which revealed that Alsip had a peritonsillar abscess. Dr. Wilkinson then referred Alsip to a specialist, Dr. Louis Modica.

Dr. Modica performed an aspiration, whereby a needle was placed into the tissue of the abscess. Ten minutes after the aspiration, a nurse informed Dr. Modica that Alsip was bleeding heavily from the aspiration site. Upon examination, Dr. Modica determined that while performing the aspiration he had inadvertently punctured an artery. Dr. Modica immediately consulted an anesthesiologist and ordered an operating room, but one was not available. In the interim, Dr. Modica applied pressure in an attempt to control the bleeding. Although Dr. Modica characterized Alsip's condition as an emergency, the wait for an operating room lasted more than two hours. During this time, Alsip suffered significant blood lost and went into hypovolemic shock. Surgery eventually was performed to repair Alsip's lacerated artery.

The critical care team of Johnson City Medical Center was charged with caring for Alsip after his surgery. Despite the best efforts of these doctors—defendant Modica numbers them at nine—Alsip's condition deteriorated. It was learned that Alsip suffered from numerous pre-existing health problems, including sepsis and disseminated intravascular coagulation; after surgery, Alsip developed adult respiratory distress syndrome, renal failure, and pneumonia. He died at Johnson City Medical Center in November 2000.

Alsip's surviving children and mother filed this medical malpractice action in August 2001 against Dr. Modica and other defendants. One month later, Dr. Modica filed an answer denying allegations of medical malpractice, and in December 2001, an agreed order was issued to allow Dr. Modica access to "any and all medical records and radiographic films of [the decedent]." After the plaintiffs' deposition of Dr. Modica and the defendants' deposition of the plaintiffs' expert, Dr. Randall Dalton, the plaintiffs submitted written interrogatories to Dr. Modica, asking for, among other things, identification of the defendants' expert witnesses. After receiving these interrogatories, Dr. Modica filed the matter that concerns us here: a motion to allow ex parte interviews with the decedent's post-surgery, non-party physicians.

Although expressly holding that the decedent enjoyed a right to privacy and that a covenant of confidentiality existed between Alsip and his doctor (and that neither was waived by filing this lawsuit), the trial judge granted Dr. Modica's motion allowing ex parte communications with Alsip's other physicians, but only on the following terms:

The defense motion will be granted to the extent that the requested doctors were in active communication with the defendant during Mr. Alsip's care and treatment, in accord with the criteria established and discussed in the *Kilian* case.

The sole legal authority for this order appears to have been *Kilian v. Med. Educ. Assistance Corp.*, No. 22477 (Washington County Law Court May 19, 2003), a decision of the same trial court less than five months before the issuance of the order allowing ex parte communications in this case. In *Kilian*, the trial court authorized but also established the following restrictions on such communications:

1. Defendant's counsel in a medical malpractice case may have ex parte conversations with plaintiff's treating physician without express authorization by the plaintiff ONLY under the following conditions:

    a) The court in which the action is pending must authorize the contact pursuant to a motion filed by defendant with notice to plaintiff;

    b) The information sought must relate only to A) the diagnosis and treatment of the condition for which the plaintiff originally sought treatment and B) any time-relevant treatment for any injury claimed to have arisen from the alleged malpractice where the defendant physician was still involved in treatment of the plaintiff;

    c) No defendant physician shall be present during the contact; and

    d) Counsel shall not engage in inappropriate discussion of matters such as malpractice cases in general, their impact on professional insurance, jury awards, professional reputations or the like. The discussion shall be limited as specified in paragraph no. 2[1] above and the physician's opinion in connection therewith.[2]

The trial court granted the plaintiffs' motion for interlocutory appeal and stayed the order pending appellate review. The Tennessee Court of Appeals ruled in favor of the plaintiffs and struck down the trial court's order.

The sole issue in this case is whether the trial court erred by granting the defendant's motion and issuing an order authorizing ex parte communications between defense counsel and the decedent's non-party physicians. On this issue, we agree with the predominant trend among the states, and with our own appeals court, that it did.

### STANDARD OF REVIEW

■ Because this case concerns a question of law, "we review [it] under a pure *de novo* standard ..., according no deference to the conclusions of law made by the lower courts." *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn.2001).

### LEGAL ANALYSIS

■ Although no *testimonial privilege* protecting doctor-patient communications has ever been recognized by this Court or declared by Tennessee statute, in *Givens v. Mullikin*, 75 S.W.3d 383 (Tenn.2002), we recognized an implied *covenant of confidentiality* in medical-care contracts between treating physicians and their pa-

---

1. No such numbered paragraph appears in the order above the paragraph quoted here. Presumably this reference was intended to be to part (b) in this quotation.

2. We choose to quote here from the trial court's written and signed order rather than the trial court's oral opinion, which differed somewhat from its written order and appears to be a less precise rendition of the trial court's intended meaning.

tients. This covenant forbids doctors from "releas[ing] without the patient's permission . . . any confidential information gained through the [physician-patient] relationship." *Givens*, 75 S.W.3d at 407. We explained in *Givens* that the covenant of confidentiality arises not only from the implied understanding of the agreement between patient and doctor, but also from a policy concern that such private and potentially embarrassing information should be protected from public view. *Id.* (citing in support Tennessee Code Annotated sections 63–2–101(b)(1) (1997), 68–11–1502 (2001), and 68–11–1503 (2001), which are indicative of the General Assembly's desire to keep confidential a patient's medical records and identifying information). Indeed, "[t]he relationship of patient to physician is a particularly intimate one [because] [t]o the physician we bare our bodies . . . in confidence that what is seen and heard will remain unknown to others." *Cua v. Morrison*, 626 N.E.2d 581, 586 (Ind.Ct.App.1993). For this reason "the public has a widespread belief that information given to a physician in confidence will not be disclosed to third parties absent legal compulsion, . . . and [thus] the public has a right to have this expectation realized." *Duquette v. Superior Court in and for County of Maricopa*, 161 Ariz. 269, 778 P.2d 634, 640 (Ct.App. 1989). Our recognition in *Givens* of an implied covenant of confidentiality reflects these concerns.

■ Like all contract terms, however, the implied covenant of confidentiality becomes unenforceable when it offends public policy. *Planters Gin Co. v. Federal Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn.2002). For example, as we explained in *Givens*, the covenant is voided when a doctor determines that a patient's illness presents a foreseeable risk to third parties; in such circumstances, the doctor has a duty to break the patient's confidence and risks no civil liability when he

does so. 75 S.W.3d at 409. State law also requires doctors to report "any wound or other injury inflicted by means of a knife, pistol, gun, or other deadly weapon, or by other means of violence" to police, in clear violation of the covenant of confidentiality, in order to promote vital societal interests in public safety, law enforcement, and crime deterrence. Tenn.Code Ann. § 38–1–101 (2005). Public policy as reflected in state law also vitiates the covenant of confidentiality by requiring doctors to report suspected child abuse, sexual assault, and instances of venereal disease in minors who are thirteen and under. Tenn.Code Ann. § 37–1–403 (2001). Thus, the covenant of confidentiality is not absolute and can be voided when its enforcement would compromise the needs of society.

■ Most important to this case, public policy considerations reflected in the Tennessee Rules of Civil Procedure require that the covenant of physician-patient confidentiality be voided for the purpose of discovery. *See* Tenn. R. Civ. P. 26; *Gall ex rel. Gall v. Jamison*, 44 P.3d 233, 239 (Colo.2002) ("Strong public policy considerations support a construction of Rule 26(a)(2) favoring broad disclosure."). Tennessee Rule of Civil Procedure 26.02, which defines the scope of discovery, clearly states that unprivileged information relevant to the lawsuit is discoverable. In *Givens* we stated "a physician cannot withhold [the plaintiff's relevant medical] information in the face of a subpoena or other request cloaked with the authority of the court." 75 S.W.3d at 408. This exception stems from "public policy [concerns] as expressed in the rules governing pre-trial discovery": in any medical malpractice action, the dictates of due process require voidance of the covenant of confidentiality so that the truth of the matter can be revealed and the defendant can defend himself against civil liability. *Id.* Thus, for

example, if the parties dispute whether certain information is relevant, the trial court may order discovery upon a finding of relevance because, by filing the lawsuit, the plaintiff impliedly consents to disclosure of his *relevant* medical information.[3]

■ The present case confronts us with the following question: does public policy dictate that the covenant of confidentiality contained in the contract between patient and physician be voided by the filing of a medical malpractice lawsuit with the consequence that a trial court may authorize defense counsel to communicate ex parte with non-party physicians who treated the plaintiff for injuries allegedly arising from the malpractice? The issue presented requires us to balance society's legitimate desire for medical confidentiality against medical malpractice defendants' need for full disclosure of plaintiffs' relevant health information.

We simply are not persuaded that the defendants here would be impeded from learning all the decedent's relevant medical information by being prohibited from communicating ex parte with non-party physicians. " '[A] prohibition against . . . ex parte contacts regulates only how defense counsel may obtain information from a plaintiff's treating physician, i.e., it affects defense counsel's methods, not the substance of what is discoverable.' " *Crist v. Moffatt*, 326 N.C. 326, 389 S.E.2d 41, 45 (1990) (quoting *Manion v. N.P.W. Med. Ctr.*, 676 F.Supp. 585, 593 (M.D.Penn. 1987)). On this point, all the parties to this case, and their amici, agree: not only did the defendant here have access to "any and all" of the decedent's medical records

pursuant to an agreed order, the defendant also may obtain discovery of all relevant medical information via any of the formal procedures prescribed in Tennessee Rule of Civil Procedure 26.01, including deposition upon oral examination or written questions, written interrogatories, and requests for admissions. The plaintiff here fully concedes that the decedent's relevant medical information is discoverable—the question is simply *how* the defendant may discover it. "[I]t is undisputed that ex parte conferences yield no greater evidence, nor do they provide any additional information, than that which is already obtainable through the regular methods of discovery." *Petrillo v. Syntex Lab., Inc.*, 148 Ill.App.3d 581, 102 Ill.Dec. 172, 499 N.E.2d 952, 956 (1986). We agree with numerous "[o]ther courts [that have] concluded that formal discovery procedures enable defendants to reach all relevant information while simultaneously protecting the patient's privacy by ensuring supervision over the discovery process. . . ." *Crist*, 389 S.E.2d at 46 (citing *Petrillo v. Syntex Lab., Inc.*, 102 Ill.Dec. 172, 499 N.E.2d at 963; *Roosevelt Hotel Ltd. P'ship v. Sweeney*, 394 N.W.2d 353, 356 (Iowa 1986); *Anker v. Brodnitz*, 98 Misc.2d 148, 413 N.Y.S.2d 582, 585–86 (N.Y.Sup.Ct.1979)). As a result, we cannot agree that public policy concerns on this score dictate that we allow ex parte communications between defense counsel and the decedent's non-party physicians.

It is important to note that "the confidential nature of the physician-patient relationship remains even though medical information is . . . subject to discovery"

---

**3.** Tennessee Rule of Civil Procedure 26.02 states

[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . It is not ground for objection that the information sought will

be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Thus, the Rule requires that all information elicited during discovery be relevant to the action but not necessarily admissible.

because the plaintiff's contractual right to medical confidentiality remains in all his health information *not relevant* to the malpractice lawsuit. *Crist,* 389 S.E.2d at 46; *Petrillo,* 102 Ill.Dec. 172, 499 N.E.2d at 959. Having determined the sufficiency of the formal methods of discovery expressly authorized by Rule 26 to reveal all the decedent's relevant medical information to the defendants, we find it reasonable to conclude that those formal discovery methods exclusively define the *manner* of disclosure in medical malpractice cases. "The fact that a party may obtain the same information through formal discovery as can be obtained informally *supports* the [exclusive] use of [formal] discovery [procedures] ... [because their] utilization ... places the plaintiff in a position to object to irrelevant inquiries." *Karsten v. McCray,* 157 Ill.App.3d 1, 109 Ill.Dec. 364, 509 N.E.2d 1376, 1384 (1987); *accord Petrillo,* 102 Ill.Dec. 172, 499 N.E.2d at 959; *Duquette,* 778 P.2d at 637. Because consent here to disclose the decedent's confidential, relevant medical information was *implied at law* as a consequence of the plaintiffs' conduct (i.e., by the filing of the lawsuit), rather than done expressly (e.g., by written waiver), the scope of the plaintiffs' consent must be determined by the express terms of the Tennessee Rules of Civil Procedure, which do not prescribe ex parte communications. Nothing in the law indicates that the plaintiffs impliedly consented to the revelation of the decedent's health information by any methods other than those expressly outlined in the Tennessee Rules of Civil Procedure. Moreover, because the formal methods of discovery suffice to disclose all medical information relevant to the case, the needs of the trial court system, and hence the dictates of public policy, are fulfilled without ex parte communications. Were we to conclude that the plaintiffs' implied consent included permission to defense counsel to communicate ex parte with non-party physicians, we would force the plaintiffs to risk, unnecessarily, disclosure of irrelevant and confidential medical information.[4] *Neubeck v. Lundquist,* 186 F.R.D. 249, 250 (D.Maine 1999) ("Restricting a defendant's access to formal methods of discovery protects against [the] possibility ... [of] unintentionally disclosing privileged information not relevant to any issue in the case."). In short, we agree with the Supreme Court of Minnesota that by precluding informal interviews

> both the patient and his physician are protected from the danger that adverse counsel may abuse his opportunity to interrogate the physician by privately inquiring into facts or opinions about the patient's mental and physical health or history which may neither be relevant to the patient's lawsuit nor lead to discovery of admissible evidence. In a formal deposition ... the presence of a patient's counsel ... assure[s] that clearly irrelevant medical testimony will not be elicited.

---

**4.** Such a requirement would also violate the *understanding of the patient and physician* when they formed a contract that included an implied covenant of confidentiality. As we stated in *Givens,* "[w]hile the understanding of the parties giving rise to the implied covenant of confidentiality permits a physician to disclose information pursuant to subpoena or court order, *this understanding does not include permission to divulge this information informally without the patient's consent.*"

*Givens,* 75 S.W.3d at 408–09 (emphasis added); *see also Kitzmiller v. Henning,* 190 W.Va. 142, 437 S.E.2d 452, 454 (1993) ("Private ... interviews ... threaten to undermine the confidential nature of the physician-patient relationship.... [The plaintiff] does not consent, simply by filing suit, ... to his physician's discussing the patient's confidences in an ex parte conference with the patient's adversary.").

*Wenninger v. Muesing*, 307 Minn. 405, 240 N.W.2d 333, 336–37 (1976).

We are not impressed with the chief public policy concern that the defendants and their amici argue require defense counsel to be allowed to communicate ex parte with the plaintiffs' non-party physicians. Defense counsel points to Tennessee Rule of Civil Procedure 1, which states that "[t]hese rules shall be construed to secure the just, speedy, and inexpensive determination of every action," and argues that ex parte communications should be allowed because they promote efficient discovery. We think it clear that prohibition of informal interviews with non-party treating physicians will do little to increase the burden on defense attorneys because efficient alternative methods are available, including deposition by written questions. Tenn. R. Civ. P. 26.02; *Petrillo*, 102 Ill. Dec. 172, 499 N.E.2d at 963. Plaintiffs' counsel may also consent to informal interviews with both counsel present. *Pearce v. Ollie*, 121 Idaho 539, 826 P.2d 888, 901 (1992) (Bistline, J., concurring in part and dissenting in part). On this issue, we agree with the Supreme Court of New Hampshire: "while *ex parte* interviews may be less expensive and time-consuming than formal discovery ..., these interests are insignificant when compared with the patient-plaintiff's interest in maintaining the confidentiality of personal and possibly embarrassing information, irrelevant to the determination of the case being tried." *Nelson v. Lewis*, 130 N.H. 106, 534 A.2d 720, 723 (1987).

We also believe that prohibiting ex parte communications between defense counsel and plaintiffs' non-party doctors will conserve judicial resources for a reason not mentioned by the defendants here: the potential tort or contract liability of non-party doctors for disclosure of confidential information during informal interviews.[5] Although the order issued by the trial court here does much to properly focus the scope of any ex parte communication toward relevant medical information, the order does not require defense counsel to inform the non-party physician either that he has a right to refuse to be interviewed informally or that he may be held personally liable for disclosures outside the relevance of the present litigation. *Crist*, 389 S.E.2d at 47. These omissions, we think, are important because of "the difficulty of determining whether a particular piece of information is relevant to the claim being litigated.... Asking a physician, untrained in the law, to assume this burden is a great[ ] gamble and is unfair...." *Roosevelt Hotel Ltd. v. Sweeney*, 394 N.W.2d 353, 357 (Iowa 1986). As we explained above, the risk of breaching physician-patient confidentiality is heightened by ex parte communications, which could "expose the doctor to charges of professional misconduct or tort liability." *Crist*, 389 S.E.2d at 47. Thus, were we to allow ex parte communications between defense counsel and the plaintiffs' non-party treating physicians, increased litigation in the State's already overburdened trial court system would result.

## CONCLUSION

Tennessee Rule of Civil Procedure 26 allows for discovery of any unprivileged

---

**5.** Furthermore, while we do not in any way impugn the integrity of defense counsel in this case, we recognize that defense lawyers could abuse the opportunity, which ex parte communications provide, to inquire into the plaintiff's confidential medical matters. Given the adversarial nature of our court system, this, we think, is no small concern. Moreover, disclosure of confidential health information is entirely possible even when defense counsel acts in good faith: "The questioning attorney simply cannot reasonably anticipate the physician's response and, therefore, cannot protect against the disclosure of confidential information." *Steinberg v. Jensen*, 194 Wis.2d 439, 534 N.W.2d 361, 371 (1995).

information that is also *relevant* to the lawsuit. Because ex parte communications unnecessarily endanger the integrity of the covenant of confidentiality between patient and physician by risking disclosure of the decedent's medical information not relevant to the lawsuit, and because the formal methods of discovery provided for in Rule 26.01 suffice to provide the defendants with all the decedent's relevant medical information, we hold that the trial court erred by issuing the order in controversy here. *See also Kitzmiller v. Henning,* 190 W.Va. 142, 437 S.E.2d 452, 455 (1993) ("Ex parte interviews are prohibited because they pose the danger of disclosing irrelevant medical information that may compromise the confidential nature of the doctor-patient relationship without advancing any legitimate object of discovery."). Neither the law nor public policy requires the plaintiff to bear the risk of disclosure of irrelevant confidential medical information in informal, private interviews with opposing counsel and non-party doctors. Therefore, we affirm the judgment of the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion.

The costs of this appeal are taxed to defendants, Johnson City Medical Center; Mountain State Health Alliance; Louis Modica, M.D.; ETSU Physicians and Associates; Dr. Mark Wilkinson; and Johnson City Emergency Physicians; and their sureties, for which execution may issue if necessary.