IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 14, 2008 Session


BILLY OVERSTREET v. TRW COMMERCIAL STEERING
DIVISION ET AL.


Extraordinary Appeal from the Chancery Court for Smith County
No. 7316      C.K. Smith, Chancellor


No. M2007-01817-SC-R10-WC - Filed June 17, 2008


WILLIAM C. KOCH, JR., J., concurring.


I concur with the Court's conclusion that, in the context of litigation regarding a claim under the Workers' Compensation Act, the employer and the employer's lawyer are not entitled to have ex parte communications with the physician treating the employee. However, I base my conclusion on legal principles that differ from the "contract implied in law" theory relied upon by the Court.

There is little dispute today that the law imposes a duty on a physician not to disclose a patient's confidential health information unless the patient expressly or impliedly consents or unless the law requires or permits disclosure. While this duty is of ancient origin,[1] the courts have been neither consistent nor clear with regard to the source of or the legal basis for this duty.

In the absence of statutes imposing a duty of non-disclosure on a physician, this Court held in 1965 that the only source of this duty could be "an implied contract between the parties that the results of the examination would remain confidential." *Quarles v. Sutherland*, 215 Tenn. 651, 657, 389 S.W.2d 249, 252 (1965). The Court also limited the availability of this implied duty to patients who had paid the physician for their services. *Quarles v. Sutherland*, 215 Tenn. at 657-58, 389

---

[1]In 1776, Lord Mansfield held that a physician could be required to reveal a patient's confidences in a bigamy trial. He stated that "[i]f a surgeon was voluntarily to reveal . . . secrets, to be sure, he would be guilty of a breach of honor and of great indiscretion; but to have that information in a court of justice, which by law of the land he is bound to do, will never be imputed to him as any indiscretion whatever." *Rex v. Duchess of Kingston*, 20 How. St. Tr. 355, 572-73 (H.L. 1776). Decades later, Scotland's Court of Session dispelled the notion that the unauthorized disclosure of a patient's confidences was merely a "breach of honor." The case involved a physician's disclosure to a minister of the apparent premarital conception of a child that caused the plaintiff to be expelled from the church. Lord Fullerton held "that a medical man, consulted in a matter of delicacy can gratuitously and unnecessarily make [the information] the subject of public communication, without incurring any imputation beyond what is called a breach of honor, and without any liability to a claim of redress in a court of law, is a proposition to which the Court will hardly give their countenance." *A.B. v. C.D.*, 14 D. 177, 179-80, 7 Scots Rev. Rep. (H.L. ser.) 800 (Ct. Sess. 1851). *See* Comment, *Privileged Communications to Physicians*, 30 Yale L.J. 289 (1921).

S.W.2d at 252. Despite the fact that the Tennessee General Assembly and Congress have now enacted statutes defining a physician's duty of non-disclosure of confidential heath information,[2] this Court has continued to adhere to the implied contract[3] theory as the basis for the physician's duty.

In 2002, this Court recognized the existence of an implied contract of confidentiality arising from "the original contract of treatment for payment." *Givens v. Mullikin ex rel. McElwaney*, 75 S.W.3d 383, 407 (Tenn. 2002). The Court reaffirmed this holding four years later when it held that the implied covenant of confidentiality prevented ex parte communications between defense counsel and the plaintiff's physician. *Alsip v. Johnson City Med. Ctr.*, 197 S.W.3d 722, 725-30 (Tenn. 2006). As construed in this case, both the *Givens* and the *Alsip* decisions involved contracts that were implied in fact, that is contracts that were inferable from the facts of each case.

Because the Court had limited the duty of non-disclosure to physicians who were being paid by their patients, the Court could not base its decision in this case on either the *Givens* and *Alsip* decision. There is no evidence that Mr. Overstreet contracted with Dr. Haynes to pay him anything for the medical treatment he received. To the contrary, all agree that Mr. Overstreet paid nothing for the treatment he received from Dr. Haynes. Accordingly, the Court was required to fashion another legal justification for finding the existence of an implied contract of confidentiality. It found this justification by holding that the contract of confidentiality was implied in law.[4] The "law" upon which the implied contract of confidentiality recognized in this case rests appears to be Tenn. Code Ann. §§ 63-2-101(b)(1), 68-11-1502, -1503.

The use of the "implied contract" and "implied covenant" theories have been questioned by the courts and the commentators.[5] The concerns most frequently voiced include: (1) the evidentiary

---

[2]*See* Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29 & 42 U.S.C.) [hereinafter "HIPAA"]; HIPAA Privacy Rule, 45 C.F.R. §§ 160, 164 (2007); Tenn. Code Ann. § 63-2-101(b)(1) (Supp. 2007) ("Except as otherwise provided by law, such patient's medical records shall not constitute public records, and nothing contained in this part shall be deemed to impair any privilege of confidentiality conferred by law on patients, their personal representatives or heirs."); Tenn. Code Ann. § 68-11-1502 (2006) ("Every patient entering and receiving care at a health care facility licensed by the board for licensing health care facilities has the expectation of and right to privacy for care received at such facility."); *see also* Tenn. Code Ann. § 68-11-1503 (2006).

[3]The Court continues to use the terms "implied contract" and "implied covenant" interchangeably despite the significant legal difference between the two.

[4]A contract implied in law is a contract "imposed by operation of law, and not because of any inferences that can be drawn about the facts of a case." *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 423 (2d ed. 1995).

[5]*See, e.g.*, *Biddle v. Warren Gen. Hosp.*, 715 N.E.2d 518, 523 (Ohio 1999) (comparing the theories to "fit[ting] a round peg into a square hole" and observing that they are "ill-suited for the purpose, and their application contrived"); David A. Elder, *Privacy Torts* § 5:2 (2002) (characterizing the theories as "awkward fiction[s] at best"); Jessica Berg, *Grave Secrets: Legal and Ethical Analysis of Postmortem Confidentiality*, 34 Conn. L. Rev. 81, 92 (2001) (observing that the theories provided a "shaky basis" for confidentiality protections); *see also Humphers v. First Interstate Bank*, 696 P.2d 527, 528-29 (Or. 1985) (noting that the doctrinal limits on contract law make the implied contract theory inconvenient).

problems associated with implied contracts, (2) the difficulty of applying the theories to insurance companies, health maintenance organizations, blood banks, epidemiologists, accreditation bodies, and other secondary disclosures, and (3) the limitation of the remedies available for contract claims.[6]

Instead of using the theory of implied contract as the basis of a physician's duty not to disclose a patient's confidential health information unless the patient expressly or impliedly consents or unless the law requires or permits disclosure, I would base the duty on the nature of the physician-patient relationship itself.

A fiduciary or confidential relationship can exist without an express or implied contract. The relationship[7] arises when one person reposes special trust and confidence in another person[8] and that other person – the fiduciary – undertakes to assume responsibility for the affairs of the other party.[9] The person upon whom the trust and confidence is imposed is under a duty to act for and to give advice for the benefit of the other person on matters within the scope of the relationship. *McRedmond v. Estate of Marianelli*, 46 S.W.3d 730, 738 (Tenn. Ct. App. 2000); Restatement (Second) of Torts § 874 cmt. a (1979). Fiduciary duties are the highest standard of duty imposed by law. *First Tenn. Bank Nat'l Ass'n v. C.T. Resorts Co.*, 1995 WL 511884, at *5; 21 *Tennessee Practice: Contract Law and Practice* § 6.14, at 504.

Patients bear their bodies to their physicians with the expectation that what the physician hears and sees will remain unknown to others. *Alsip v. Johnson City Med. Ctr.*, 197 S.W.3d at 726 (quoting *Cua v. Morrison*, 626 N.E.2d 581, 586 (Ind. Ct. App. 1993)). If it were otherwise, patients would be reluctant to freely disclose their symptoms and conditions to their physicians in order to receive proper treatment. *Hague v. Williams*, 181 A.2d 345, 349 (N.J. 1962). Accordingly, we have long recognized that physicians have a fiduciary relationship with their patients. *Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674, 683 (Tenn. 2005); *Shadrick v. Coker*, 963 S.W.2d 726, 736 (Tenn. 1998); *Turner v. Leathers*, 191 Tenn. 292, 298, 232 S.W.2d 269, 271 (1950); *see also Ison v. McFall*, 55 Tenn. App. 326, 360, 400 S.W.2d 243, 258 (1964).

---

[6]*See, e.g.*, Susan M. Gilles, *Promises Betrayed: Breach of Confidence as a Remedy for Invasions of Privacy*, 43 Buff. L. Rev. 1, 25-32 (1995); Wendy E. Parmet, Comment, 16 Harv. C.R.-C.L.L. Rev. 265, 287 (1981); Alan B. Vickery, Note, *Breach of Confidence: An Emerging Tort*, 82 Colum. L. Rev. 1426, 1444-47 (1982).

[7]All fiduciary relationships are confidential relationships, but not all confidential relationships are fiduciary relationships. A fiduciary relationship connotes a legal relationship, a confidential relationship includes not only fiduciary relationships but also every other relationship in which confidence is rightly reposed and exercised. 21 Steven W. Feldman, *Tennessee Practice: Contract Law and Practice* § 6.13, at 504 (2006) ("*Tennessee Practice: Contract Law and Practice*").

[8]*Hope v. Klabal*, 457 F.3d 784, 791 (8th Cir. 2006); *Lank v. Steiner*, 213 A.2d 848, 852 (Del. Ch. 1965); *First Tenn. Bank Nat'l Ass'n v. C.T. Resorts Co.*, No. 03A01-9503-CH-00102, 1995 WL 511884, at *5 (Tenn. Ct. App. Aug. 30, 1995) (No Tenn. R. App. P. 11 application filed).

[9]*Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 902, 917-18 (W.D. Ky. 2007)*; Quinn v. Phipps*, 113 So. 419, 421 (Fla. 1927); *Craggett v. Adell Ins. Agency*, 635 N.E.2d 1326, 1331-32 (Ohio Ct. App. 1993) (noting that a confidential relationship cannot be unilateral, rather both parties must understand that a special trust or confidence has been reposed); *Steele v. Victory Sav. Bank*, 368 S.E.2d 91, 94 (S.C. Ct. App. 1988).

One of the fiduciary duties that a physician assumes when he or she undertakes to treat a patient is the duty to refrain from disclosing a patient's confidential health information unless the patient expressly or impliedly consents or unless the law requires or permits disclosure. *See Baylaender v. Method*, 594 N.E.2d 1317, 1324-25 (Ill. Ct. App. 1992); *Alberts v. Devine*, 479 N.E.2d 113, 118-20 (Mass. 1985); *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 566-68 (Mo. 2006); *Sorensen v. Barbuto*, 177 P.3d 614, 617-18 (Utah 2008); *Morris v. Consolidation Coal Co.*, 446 S.E.2d 648, 651-54 (W. Va. 1994). The scope of this fiduciary duty depends upon the particular agreement, if any, between the patient and the physician and upon the applicable state and federal statutes and regulations.

The Court has appropriately recognized that the Tennessee General Assembly has enacted statutes that suggest a public policy favoring the non-disclosure of a patient's confidential health information. However, the General Assembly also has enacted statutes requiring a physician treating an employee under the Workers' Compensation Act to furnish the employer with complete, written reports with regard to the injury, the effect of the injury on the employee, the treatment prescribed, the length of hospitalization, and the itemized charges. Tenn. Code Ann. § 50-6-204(a)(1) (Supp. 2007). Similarly, hospitals are required to provide employers with complete copies of their records of an employee's treatment. Tenn. Code Ann. § 50-6-204(a)(2)(A). In addition, both physicians and hospitals must provide employers with subsequent prognosis reports, medical records, and statements of charges. Tenn. Code Ann. § 50-6-204(a)(2)(B).

The reports and information that are statutorily required or permitted to be furnished to an employer are clear and well-defined exceptions to a physician's fiduciary duty of non-disclosure. In fact, the Tennessee General Assembly expressly stated that

> No such relevant information developed in connection with treatment or examination for which compensation is sought by the employee shall be considered a privileged communication. The employee's consent shall not be required for the furnishing of such reports or records, and no physician or hospital furnishing such report or record shall incur any liability as a result thereof.

Tenn. Code Ann. § 50-6-204(a)(2)(B).[10] However, the physician's duty of non-disclosure applies to the disclosure of personal health information beyond that required or permitted by statute. Because no statute permits the employer or its attorney to have ex parte communications with the employee's physician, such communications are prohibited by the physician's fiduciary duty of non-disclosure.

---

[10] Mr. Overstreet expressly requested Dr. Haynes not to "discuss anything about me with the attorney or attorneys who represent or work for my employer and/or its workers' compensation insurance carrier (company) in person, by letter, by phone and/or otherwise." An employee cannot alter an employer's statutory right to receive personal health information with regard to treatment for which the employee is seeking payment under the Workers' Compensation Act. Therefore, Mr. Overstreet's request, to the extent that it is inconsistent with Tenn. Code Ann. § 50-6-204, is invalid and unenforceable.

Accordingly, I would find that employees seeking benefits under the Workers' Compensation Act retain their privilege against the non-disclosure of their personal health information except to the extent that this privilege has been altered by federal or state law.[11] Neither state nor federal law requires or permits employers or their agents to have ex parte discussions with their employees' treating physicians. Therefore, a physician's fiduciary duty to refrain from disclosing a patient's confidential health information prevents that physician from engaging in ex parte discussions, unless the patient expressly or impliedly consents or unless the law requires or permits disclosure.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[11] For example, the HIPAA Privacy Rule explicitly exempts disclosures made in accordance with a state's workers' compensation laws. 45 C.F.R. § 164.512(l). Accordingly, for the purpose of claims under the Workers' Compensation Acts, both federal and state law require treating physicians to disclose health information that would otherwise be private.