IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 6, 2019 Session

# RHONDA WILLEFORD, ET. AL. v. TIMOTHY P. KLEPPER, M.D., ET AL.

**Appeal from the Circuit Court for Overton County**
No. 2015CV7        Jonathan L. Young, Judge
_____

No. M2016-01491-SC-R11-CV
_____

HOLLY KIRBY, J., concurring in part and dissenting in part.

I concur in much of the majority's excellent analysis, in its framing of the issues, and in its stated decision to adopt a substantive-versus-procedural test for whether a statute violates the separation of powers clause. I write separately because I must dissent from the majority's holding that Tennessee Code Annotated section 29-26-121(f) is unconstitutional *only* to the limited extent that it makes ex parte interviews mandatory instead of permissive. I see no way to avoid holding that the statute is unconstitutional in its entirety.

I respectfully disagree with the majority opinion's analysis in four important respects. First, the majority does not apply the substantive-versus-procedural analysis it says it adopts. Second, application of the substantive-versus-procedural test necessarily leads to the conclusion that section 29-26-121(f) is wholly procedural and thus unconstitutional. Third, even you assume *arguendo* that the statute is partly substantive and partly procedural, under the standard cited by the majority and under *State v. Lowe*, 552 S.W.3d 842 (Tenn. 2018), it is still unconstitutional in its entirety because it abrogates this Court's policy ruling on court procedure. Fourth, elision of the statute does not render it constitutional.

Consequently, instead of holding that section 29-26-121(f) is unconstitutional only to the limited extent that it makes ex parte interviews mandatory instead of permissive, I believe the Court is obliged to hold that the entire statute violates the Separation of Powers Clause in Tennessee's Constitution.

## Substantive-Versus-Procedural Analysis

*a. Failure to specify test or apply one*

I agree with the majority's good discussion of why the Court should adopt a procedural-versus-substantive analysis for determining whether a statute that abrogates this Court's ruling in a case violates the separation of powers clause. Unfortunately, the majority does not actually apply such an analysis. The majority recites some definitions for "substantive" and "procedural" and quotes standards to be used when a statute has aspects of both, but it does not state which definitional test should be used for procedural law and substantive law, and it does not apply any of the definitions and standards it recites.

Under classic application of the substantive-versus-procedural analysis, courts specify which definitions of substantive and procedural apply, compare those definitions to the statutory language, and explain how that language fits one definition or the other.[1] As an example, the Florida Supreme Court engages in precisely this type of analysis in *Massey v. David,* 979 So.2d 931 (Fla. 2008). *Massey* is cited favorably by the majority in this case.

In *Massey*, the Court considered the constitutionality of a statute that prohibited courts from awarding expert witness fees as taxable costs unless the expert furnished the opposing parties with a signed written report. *Id*. at 939 (citing statute). The *Massey* Court first adopted classic definitions of substantive law and procedural law, discussed more fully below. *Id*. at 936–37. Examining the language of the statute, the Court found it was not substantive in that it did not "fix or declare any primary rights of individuals . . . ." *Id*. at 939–40 (citation omitted). Because the statute "only delineate[d] the steps that a party must fulfill (i.e., the proverbial hoops through which a party must jump) to be entitled to an award of expert witness fees as costs," *Massey* held, the statute was "unquestionably a procedural one which conveys no substantive right at all." *Id*. at 940 (citation omitted).

The majority's analysis does not follow this standard framework. It does not specify which definitions of substantive law and procedural law should apply and does not apply any such definitions to the statutory language in question. Instead, it looks at part[2] of the legislative history and concludes that the statute "changed the overriding public policy concern" in medical malpractice cases to "equality of access to information and a balance of the interests of the parties."[3] How does this line up with definitions of substantive or procedural? That is not explained.

---

[1] *See, e.g., Broussard v. St. Edward Mercy Health Sys., Inc*., 386 S.W.3d 385, 389 (Ark. 2012) (adopting definitions of substantive law and procedural law, comparing them to statutory language, and determining which parts of statute were substantive and which were procedural).

[2] *See* fn. 6 below.

[3] The majority reasons that, because the State legislature would have authority to "vitiate the covenant of confidentiality" recognized in *Alsip*, it could enact section 29-26-121(f) to "change[] the

The majority asserts that it "was within the legislature's purview to modify the import of this public policy." The phrase "public policy" does not denote either substantive or procedural. While the legislative branch holds full sway over public policy concerning the broad swath of substantive law, this Court, as the State's High Court, is a policy court. Court procedure falls squarely within the Court's ambit of authority. *See Alsip v. Johnson City Med. Ctr*, 197 S.W.3d 722, 726 (Tenn. 2006) (referring to the "public policy considerations reflected in the Tennessee Rules of Civil Procedure"); *see also State v. McCoy*, 459 S.W.3d 1, 9 (Tenn. 2014) (quoting *State v. Mallard*, 40 S.W.3d 473, 480-81 (Tenn. 2001)). The majority does not say whether the "public policy" to which it refers is substantive or procedural.

Indeed, at no place in its analysis does the majority actually hold that any aspect of section 29-26-121(f) is substantive. It states at most that the purpose of the statute "is not purely procedural." The central holding of the majority opinion eschews any use of the word "substantive" whatsoever: "Thus, we hold that the overriding purpose of the statute at issue is within the authority of the legislature, *or at least something to which the judiciary should yield if reasonably possible*."[4] (emphasis added and omitted).

Thus, the majority opinion does not in fact apply a substantive-versus-procedural analysis to determine whether section 29-26-121(f) violates separation of powers. It does not specify which definitions of substantive law or procedural law should be applied, it does not apply any such definitions to section 29-26-121(f), and it does not hold that the statute is substantive.

Below, I will apply the substantive-versus-procedural analysis to section 29-26-121(f).

*b. Which substantive-versus-procedural definitions should be used*

---

overriding public policy concern in this area" to make "equality of access to information" into "[t]he more important policy interest" in medical malpractice cases. However, confidentiality of patient medical information is no longer protected only by *Alsip*'s implied covenant of confidentiality; it is now also protected by HIPAA, a federal statute. Although other parts of the majority opinion reference HIPAA, this pivotal section of the majority's analysis does not even mention federal protection of medical confidentiality.

Under the Supremacy Clause in the federal Constitution, no state legislature can "change[] the overriding public policy concern" to make federally-protected medical confidentiality secondary to a state concern, or make the state's objective a "more important policy interest" than HIPAA-mandated confidentiality. *See* U.S. Const. art. VI, cl. 2. The Supremacy Clause prohibits states from "chang[ing] the overriding public policy concern" in the way the majority claims. The majority's failure to consider the Supremacy Clause implications of its analysis undermines the premise for its conclusion.

[4] The meaning of "at least something to which the judiciary should yield if reasonably possible" is not explained.

To determine whether section 29-26-121(f) is procedural or substantive, definitions of those terms have to be specified. The majority cites a couple of different definitions of substantive law and procedural law in its analysis. One aligns with the definitions most courts apply in a general substantive-versus-procedural analysis, while the other does not. It is necessary to choose because the majority opinion does not make it clear which definitions would theoretically apply.

The majority cites the following: "[S]ubstantive law creates, defines, and regulates *primary rights*. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated." *In re SRBA Case No. 39576*, 912 P.2d 614, 623 (Idaho 1995) (emphasis added) (citation omitted) (internal quotation marks omitted). These definitions are in line with the general definitions most courts use to decide separation-of-powers issues.[5] *See also Massey,* 979 So.2d at 936-37.

However, the majority opinion also cites with approval definitions in a Kentucky case on evidence law:

> In separating *evidence* law into substance and procedure, the best scholars draw a distinction between rules that predominantly foster accuracy in fact-finding and rules that predominantly foster other objectives. They classify the latter as substantive and place privileges in that category.

*Com., Cabinet for Health & Family Servs. v. Chauvin*, 316 S.W.3d 279, 285 (Ky. 2010) (emphasis added) (quoting Robert G. Lawson, *Modifying the Kentucky Rules of Evidence—A Separation of Powers Issue*, 88 Ky. L.J. 525, 580 (2000)). These definitions do not align with the definitions most courts use in general substantive-versus-procedural analysis. *Chauvin* and the cited law journal article both pertain only to *evidence* law. While the *Chauvin* definitions (fact-finding versus "other" objectives) might suffice for rules of evidence, they are clearly too narrow to use as a general distinction between substantive law and procedural law. A good example is provided by application of this test to a statute that requires a particular allocation of the burden of

---

[5] *See* 20 Am. Jur. 2d Courts § 47 (2018)(In general, "[t]he substantive law creates, defines, and regulates primary rights," while procedural law pertains to the operations of the courts "by which substantive law, rights, and remedies are effectuated."); *Black's Law Dictionary* (11th ed. 2019) (defining substantive law as "[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of parties" and defining procedural law as "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves."); *Broussard*, 386 S.W.3d at 389 ("Substantive law 'creates, defines, and regulates the rights, duties, and powers of parties.' In contrast, procedural law prescribes 'the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves.'") (internal citations omitted)).

proof for summary judgment, a matter that is obviously procedural. Because such a summary judgment statute would have little to do with "accuracy in fact-finding," it would have to be deemed substantive under the *Chauvin* test and outside the purview of the judiciary. Such a conclusion would clearly be incorrect.

Consequently, I will assume that the majority did not intend for future courts to use this quote from *Chauvin* as the general "test" for distinguishing between a procedural statute and a substantive statute. To analyze whether section 29-26-121(f) is substantive or procedural, I will use the definitions from *In re SRBA* and *Massey*, both cases that are cited favorably by the majority.

### c. *Section 29-26-121(f) is procedural and thus unconstitutional*

Applying these definitions, it can readily be seen that section 29-26-121(f) is procedural. The public policy concern the majority identifies, "equality of access to information" during discovery, does not involve the creation, definition or regulation of *primary rights*. Section 29-26-121(f) itself does not create, define or regulate *primary rights*. It does not address the conditions under which defendants are liable in healthcare liability actions. *See, e.g., Broussard*, 386 S.W.3d at 389 (applying definitions to Arkansas medical malpractice statute). *Compare State v. Pruitt*, 510 S.W.3d 398, 417–18 (Tenn. 2016) (holding ERRA was not substantive for ex post facto purposes because it "does not make an action criminal which was innocent when done; it does not aggravate a crime; it does not change the punishment for the crime; nor does it change the rules of evidence so that less or different testimony is required to convict the offender.").

Section 29-26-121(f) does not address whether trial courts must protect patients' private health information—according to both State and federal legislative authorities, they must. The statute does not change the type of information that is discoverable; defendants can already ask non-party treating healthcare providers about patients' relevant health information using sanctioned discovery methods such as depositions.

The only thing section 29-26-121(f) does is address *how* defendants may discover patients' health information once a healthcare liability action is filed.[6] By the definition

---

[6] In the majority opinion's discussion of the legislative history of section 29-26-121(f), it omits the fact that witnesses supporting section 29-26-121(f) in legislative hearings openly acknowledged the procedural nature of the bill. One witness at the hearing before the Senate Judiciary Committee described the bill enacting section 29-26-121(f) as creating a discovery tool. *See Hearing on S.B. 2789 Before the Senate Judiciary Comm.*, 107th Gen. Assemb. (Tenn. Mar. 13, 2012) (statement of witness attorney Howard Hayden, at 1:02:15). Another witness summarized: "In short, this bill is about procedure . . . It creates a procedure that results in a protective order." *Hearing on S.B. 2789 Before the S. Judiciary Comm.*, 107th Gen. Assemb. (Tenn. Apr. 11, 2012) (statement of witness attorney Jeffery Parrish at 6:08:20).

of "procedural law" cited by the majority, the methods by which parties may conduct discovery are "the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated." *In re SRBA Case No. 39576*, 912 P.2d at 623 (citation omitted). They are "the machinery of the judicial process." *Massey,* 979 So. 2d at 937 (citation omitted).

Thus, under the basic substantive-versus-procedural analysis the majority says it adopts, the statute is wholly procedural and violates the Separation of Powers Clause in our Constitution for that reason.

### Unconstitutional Even If Mixed Procedural and Substantive

Even if you assume *arguendo* that section 29-26-121(f) is partly substantive, the majority still does not apply the standard it says it adopts. To determine the constitutionality of a statute that has both procedural and substantive aspects, the majority quotes at length the standard set forth by the Florida Supreme Court in *Massey v. David*:

> Of course, statutes at times may not appear to fall exclusively into either a procedural or substantive classification. We have held that where a statute contains some procedural aspects, but those provisions are so intimately intertwined with the substantive rights created by the statute, that statute will not impermissibly intrude on the practice and procedure of the courts in a constitutional sense, causing a constitutional challenge to fail. If a statute is clearly substantive and operates in an area of legitimate legislative concern, this Court will not hold that it constitutes an unconstitutional encroachment on the judicial branch. However, where a statute does *not* basically convey substantive rights, the procedural aspects of the statute cannot be deemed incidental, and that statute is unconstitutional. Moreover, where this Court has promulgated rules that relate to practice and procedure, and a statute provides a contrary practice or procedure, the statute is unconstitutional to the extent of the conflict. Finally, where a statute has some substantive aspects, but the procedural requirements of the statute conflict with or interfere with the procedural mechanisms of the court system, those requirements are unconstitutional.

979 So.2d at 937 (citations omitted) (internal quotation marks omitted).

I apply this *Massey* standard below.

> a. *No substantive rights, procedural aspects not incidental*

Under the *Massey* standard quoted above, section 29-26-121(f) "does not basically convey substantive rights." *Id*. Certainly "the procedural aspects of the statute cannot be deemed 'incidental.'" *Id*.

Thus, even if the statute were partly substantive, under the *Massey* standard highlighted by the majority for such mixed statutes, section 29-26-121(f) still "is unconstitutional." *Id*.

### b. Directly conflicts with Court ruling on procedure

Furthermore, under the *Massey* standard quoted above, even if a statute has both substantive and procedural aspects, "where this Court has" issued a ruling "that relate[s] to practice and procedure, and a statute provides a contrary practice or procedure, the statute is unconstitutional to the extent of the conflict."[7] *Id*. (citation omitted).

In *Alsip*, this Court issued a procedural policy ruling that "ex parte communications between the plaintiff's non-party physicians and defense attorneys are not allowed in the State of Tennessee." *Alsip*, 197 S.W.3d at 724. By allowing such ex parte communications, section 29-26-121(f) provides a directly "contrary practice or procedure." *Massey*, 979 So. 2d at 937 (citation omitted). Under the *Massey* standard, "the statute is unconstitutional to the extent of the conflict." *Id*. Here, the *entirety* of section 29-26-121(f) conflicts with the *Alsip* ruling. Consequently, even if we assume *arguendo* that section 29-26-121(f) "is not purely procedural," application of the *Massey* standard leads inexorably to the conclusion that the statute as a whole is unconstitutional.

A decision by this Court less than two years ago lines up with the *Massey* standard on precisely this point. In *State v. Lowe*, we struck down a statute as violating separation of powers, based explicitly on the fact that the statute conflicted with Court rulings on a court procedure, a matter within the judicial sphere of authority. *See State v. Lowe*, 552 S.W.3d 842 (Tenn. 2018), *cert. denied*, 139 S. Ct. 1204, 203 L. Ed. 2d 230 (2019). In *Lowe*, the Court considered the Exclusionary Rule Reform Act ("ERRA"), a statute that forbade courts from suppressing evidence seized via a search warrant that did not comply with Rule 41 of the Tennessee Rules of Criminal Procedure, so long as the defect in the warrant was a result of a "good faith mistake or technical violation." *Id*. at 850. In its analysis, the Court recited not only the adoption of Rule 41 on search warrants, but also the long line of cases strictly construing the rule and declining to adopt a good-faith exception to it. *Id*. at 854–55. *Lowe* stated that it was considering whether the statute violated separation of powers "[b]ecause the ERRA *specifically conflicts with this*

---

[7] In *Massey*, the statute conflicted with procedures in the Florida Rules of Civil Procedure. *See Massey*, 979 So. 2d at 940–41. In the instant case, our Rules of Civil Procedure do not address ex parte interviews. However, the majority explicitly adopts the substantive-versus-procedural analysis, as employed in *Massey*, to apply "in a case such as this when a statute effectively abrogates *case law*."

*Court's holdings* regarding our exclusionary rule, as well as with the express language of a procedural rule promulgated by this Court . . . ." *Id*. at 856 (emphasis added).

*Lowe* cited *State v. Pruitt*, which held that the ERRA was procedural and that Rule 41, which the ERRA sought to modify, was a rule of criminal procedure. *Id*. at 857 (citing *Pruitt*, 510 S.W.3d at 417). *Lowe* described the ERRA as "an attempt by the General Assembly to *abrogate* both the express terms of Rule 41 and this Court's prior holdings regarding Rule 41." *Id*. (emphasis in original). For this reason, *Lowe* struck the ERRA as unconstitutional in its entirety:

> We hold that, by *directly contradicting* existing procedural rules and *then-existing Court precedent* related to any good-faith exception through the enactment of the ERRA, the General Assembly overstepped its constitutional boundaries. The ERRA represents a violation of the Tennessee Constitution's Separation of Powers Clause and, therefore, cannot be upheld.

*Id*. (emphasis added).

Here, as the majority notes in its recitation of the history of section 29-26-121(f), the statute was enacted for the explicit purpose of "abrogat[ing] the holdings in *Givens* and *Alsip*." It was even widely referred to as the "*Givens* Fix." Whatever niceties the majority wishes to use to describe the statute's purpose, just as in *Lowe*, section 29-26-121(f) was enacted as a blunt instrument "to *abrogate* . . . this Court's prior holdings regarding" ex parte interviews, a matter of pure court procedure. *Lowe*, 552 S.W.3d at 857 (emphasis in original).

For that reason, even if you assume that section 29-26-121(f) has some substantive aspects, under *Lowe* and under the *Massey* standard the majority cites for such mixed statutes, the statute violates the Separation of Powers Clause in our Constitution.

**Elision**

The majority goes on to hold that section 29-26-121(f) is a little bit unconstitutional, only to the limited extent that it removes discretion regarding protective orders on ex parte interviews from trial courts. It elides the statute to make it permissive and then pronounces the elided statute constitutional.

The unconstitutionality of section 29-26-121(f) cannot be remedied by elision because the statute *directly countermands a policy ruling by this Court on a matter of pure court procedure*. The majority's analysis pays only glancing attention to this glaring truth. Section 29-26-121(f) is not just a little bit unconstitutional; the entirety of the statute violates the separation of powers clause in our Constitution.

A comparison to *Lowe* demonstrates why elision is ineffectual in this case. The statute at issue in *Lowe* was the ERRA, which provided that if a violation of Rule 41 resulted from "a good faith mistake or technical violation" by law enforcement or court personnel, such evidence "*shall not* be suppressed" because of the Rule 41 violation. *Id*. at 850 (emphasis added) (quoting Tenn. Code Ann. § 40-6-108(a)). In other words, the ERRA took away trial courts' discretion to refuse to admit evidence. Like the caselaw that preceded section 29-26-121(f), appellate decisions prior to enactment of the ERRA had consistently held the exact opposite, that trial courts *must* suppress such evidence. *Id*. at 854–55.

Had elision been a remedy, *Lowe* would have been a better case for it. In *Lowe*, the Court noted that it had recently adopted a limited good-faith exception to the exclusionary rule and then went on to adopt another. *Id*. at 858–59. Thus, in contrast to this case, *Lowe* overruled the very caselaw the ERRA sought to abrogate.

Despite that fact, *Lowe* did not hold that the ERRA was unconstitutional *only* insofar as it limited trial courts' discretion on an evidentiary matter. *Lowe* held that the entire statute violated separation of powers "by directly contradicting . . . then-existing Court precedent related to" procedural rules, a matter squarely within the authority of the Judicial Branch. *Id*. at 857. As such, it held, "the ERRA represents an impermissible encroachment by the legislature upon this Court's authority and responsibility . . . and, therefore, violates the Tennessee Constitution's Separation of Powers Clause." *Id*. at 847.

Here, section 29-26-121(f) also "represents an impermissible encroachment by the legislature upon this Court's authority and responsibility" on a policy matter of core procedural law. Elision does not render it constitutional.

I concur in result only in the majority's holding that section 29-26-121(f) is unconstitutional to a limited extent, and in its elision of the statute. As I have stated, I would hold that the statute as a whole is unconstitutional, and these holdings by the majority at least go part of the way. However, for the reasons outlined above, I disagree with the majority's analysis on these issues.

**Conclusion**

In sum, any way you look at it, the entirety of section 29-26-121(f) violates separation of powers. Under classic substantive-versus-procedural analysis, the statute is wholly procedural, but even if you assume it is partly substantive, the statute violates separation of powers because it directly conflicts with *Alsip*'s policy ruling on a matter of court procedure.

As *Lowe* stated most emphatically, "We repeat: 'this Court has both the authority and the responsibility to decide whether'" a discovery procedure such as ex parte interviews will be permitted in Tennessee state courts. *Id*. at 857 (quoting *State v. Reynolds*, 504 S.W.3d 283, 314 (Tenn. 2016)). As in *Lowe*, I believe "[w]e are compelled to conclude that, by passing [section 29-26-121(f)], the General Assembly effectively usurped both that authority and that responsibility." *Id*. I see no way to avoid holding that the statute is unconstitutional in its entirety.

*Lowe* recognized that "[i]t is an imperative duty of the judicial department of government to protect its jurisdiction at the boundaries of power fixed by the Constitution." *Id*. (citations omitted) (internal quotation marks omitted). Discharging that duty, I believe, requires holding that the entirety of section 29-26-121(f) violates the Separation of Powers Clause in Tennessee's Constitution.

Accordingly, I concur in part and dissent in part from the majority opinion.

_____
HOLLY KIRBY, JUSTICE