**STATE of Tennessee, Appellee,**

v.

**Earl Lee FOX, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 28, 1987.

Permission to Appeal Denied by Supreme Court May 11, 1987.

W.J. Michael Cody, Atty. Gen. and Reporter, Bettye Springfield-Carter, Asst. Atty. Gen., Nashville, William E. Dossett, Dist. Atty. Gen., and David G. Dake, Asst. Dist. Atty. Gen., Knoxville, for appellee.

Sam G. Smith, Jr., Knoxville, for appellant.

## OPINION

O'BRIEN, Judge.

On 11 July 1985 defendant was convicted in the Knox County Criminal Court for aggravated rape. He was sentenced to serve twenty (20) years in the State Penitentiary.

Three issues are presented for review: (1) The sufficiency of the evidence to sustain the conviction; (2) Error by the trial court in limiting discovery of the victim's records of mental health treatment to an *in camera* review; (3) Error in admission of the testimony of a police officer in conjunction with a copy of television listings from a local newspaper for the date of the offense.

The evidence shows that about 3:30 p.m., on the date of the occurrence the victim went to the residence of defendant looking for a relative who had formerly lived there. She knocked on the door and defendant responded. When she asked about her relative he said, "yes, she is in there," and gestured for her to come in. She took a few steps into the dwelling and realized her grandmother was no longer there. There were snuff cans and newspapers scattered about and the house was in disorder. She described defendant as dirty looking, with snuff or tobacco juice going down the side of his mouth. She made an in-court identification of him as her assailant. As she turned to leave defendant shoved her onto a bed, picked up a machete and sat on her chest. He took out his penis and demanded she perform oral sex on him. When she refused he struck her in the face. He jerked up her blouse and began squeezing and feeling about her body. When she resisted he threatened her with the machete. He pulled her pants partially off, pushed her knees back onto her shoulders and forcefully engaged in intercourse with her. She blacked out while he was engaged in this act. When she recovered consciousness he was "shaking his penis off into a snuff can." He said he was leaving no evidence. She was able to kick him and run through the door when he fell over. He grabbed her by the hair but she managed to escape and run to a nearby security office. Employees there assisted her, and called the police. She was able to describe defendant's physical features to the police, and later in the day identified him from a photo display. Her description of the interior of the house was verified by the testimony of other witnesses, who also testified that defendant was a constant tobacco chewer. Her only recollection of his attire was vague. She believed he was wearing a red or red checked, flannel shirt.

Defendant conceded the possibility that the victim was assaulted in his house but denied he was the assailant. He produced witnesses to establish an alibi for the approximate time that the assault took place. This alibi was contradicted by witnesses who placed him in the near vicinity of his residence at a time when he was purportedly in Sevierville, a number of miles away. Defendant admitted he was an inveterate tobacco chewer and kept a spit can beside his bed, where the victim testified he was ejaculating. He also admitted to keeping a machete in his house.

▊ The credibility of the witnesses, the weight and value of their testimony, the inferences to be drawn from their statements, and all factual issues raised by the testimony and evidence introduced, direct and circumstantial, are matters entrusted exclusively to the jury as the triers of fact. See *Braziel v. State,* 529 S.W.2d 501, 505 (Tenn.Cr.App.1975). A jury verdict approved by the trial judge accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). Such a verdict removes the presumption of the innocence of an accused which stands as a witness for him until he is convicted, and raises a presumption of his guilt, and he has the burden upon appeal of showing that the evidence preponderates against the verdict and in favor of his innocence. See *Bailey v. State,* 479 S.W.2d 829, 831 (Tenn.Cr.App. 1972). The evidence in this case was sufficient for any rational trier of fact to find the essential elements of the crime beyond

a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2782, 61 L.Ed.2d 560 (1979); T.R.A.P. 13(e). The issue is overruled.

■ Defendant's complaint that the trial court limited discovery of the victim's mental records is also without merit. His insistence that the issue is determinable by Tennessee Rule of Criminal Procedure 16, and the principles set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is misplaced. Pursuant to defendant's discovery motion the trial judge directed that the records of Overlook Mental Health Center regarding the victim be submitted to the court for *in camera* inspection under the auspices of T.C.A. § 33–3–105(10)(C).[1] The Overlook Mental Health Center, Inc., is a private, nonprofit corporation which has no relationship with the Tennessee Department of Mental Health and Mental Retardation. Although the trial judge had a perfect right to have the records of the Mental Health Center submitted to the court for *in camera* inspection, there was no necessity for this procedure. Defendant was not entitled to discovery of the psychologist's records under the provisions of Tenn.R.Crim.P. 16. These records were not in the possession, custody or control of the State, and were not within the court's jurisdiction under the provisions of the rule. *State v. Carter,* 682 S.W.2d 224, 226 (Tenn.Cr.App.1984). As the court said in *Brady,* supra, 83 S.Ct. at p. 1198, "[I]t is the court, not the jury, that passes on the 'admissibility of evidence' pertinent to 'the issue of the innocence or guilt of the accused.'" There is no reason why the records could not have been available to the defendant had the court ruled they were admissible. The court elected to review the records *in camera* and indicated if they contained anything exculpatory of the defendant they would be disclosed to his counsel. This was a proper function of the court in this case. He did inform counsel of the general contents of the records, and advised that he found nothing exculpatory. We have examined those records,

which were sealed and transmitted to this Court with the transcript, and are in accord with the trial judge's findings. We also agree with his advice that had the jury examined the records they might actually have been influenced against the defendant because they indicated the victim was having some very serious problems attributed to her mistreatment at the hands of the rapist.

■ Defendant questions the admission into evidence of hearsay testimony of a police officer accompanied by a photocopy of television listings for the day of the conviction offense. The victim testified the offense occurred between 3:30 and 3:45 p.m. The police received a report of the offense at 3:47 p.m. Defendant's mother was one of the alibi witnesses introduced on his behalf. She testified that defendant called her at approximately 2:45 p.m. She remembered the time because she was watching a particular television program. The State was allowed on rebuttal to introduce the testimony of a police officer that he had obtained a microfilm copy of the TV schedules from the Knoxville News Sentinel for the day of 30 October 1984. This record was introduced in conjunction with his testimony and indicated that there was no such program on local television at the time defendant's mother purportedly received the telephone call from him. The State concedes this was hearsay evidence. Defendant insists this evidence provided the only contradiction to his alibi defense and that he was denied the right of confrontation by its admission. His first assertion is without merit. We have read this record thoroughly and there was evidence by State witnesses which refuted defendant's contention that he was not present at the scene of the offense at the time it occurred. Nor was there any denial of confrontation. From the viewpoint of the confrontation clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to

---

1. Title 33 of the Tennessee Code deals with mentally ill and retarded persons in the care

and custody of the State. The correct reference for disclosure is T.C.A. § 33–3–104(10)(C).

what he has heard. *Dutton, Warden v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). Of course, it was the State's intention by introducing the evidence to establish that defendant's mother was in error about the time she received the telephone call from him, or that her testimony was false. However, Officer White did not testify as to the truth or accuracy of the newspaper record, only the fact that it existed. Defense counsel was at liberty to cross-examine the witness as to the accuracy of the newspaper record, and while its admission may have had some effect on the credibility of defendant's mother, we consider the evidence neither crucial or devastating. It concerned a time which was some forty-five minutes before the rape occurred, and by her testimony it was plain defendant was calling from a telephone just a few blocks away from the place where the offense occurred. At the most the admission of the evidence was harmless error which did not effect the result of the trial on the merits. Tenn.R. Crim.P. 52(a). It did not involve a substantial right which more probable than not affected the judgment or would result in prejudice to the judicial process. T.R.A.P. 36(b).

Finding the record free of reversible error we affirm the judgment of the trial court.

DWYER and SCOTT, JJ., concur.