# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 25, 2009 Session

## STATE OF TENNESSEE v. JOHN COTE AND SARAH COTE
## In Re:  DR. SANDRA ELKINS

**Interlocutory Appeal from the Criminal Court for Sevier County**
**No. 12833-III     Rex Henry Ogle, Judge**

---

**No. E2008-02483-CCA-R9-CD - Filed September 28, 2010**

---

John and Sarah Cote, the Defendant-Appellees in this case, stand accused of offenses involving the death of a minor child.[1]  Dr. Sandra Elkins, the former Knox County Medical Examiner, performed the autopsy of the victim in the Cotes' case.  In a pre-trial motion for discovery, the Cotes requested disclosure of Dr. Elkins's personal medical records; namely, prescription records, drug treatment records, mental health records, University of Tennessee personnel records, an audit report of the East Tennessee Regional Forensic Center, and any records from the Tennessee Board of Medical Examiners.  The trial court granted an in camera review of the requested information.  Dr. Elkins originally sought an interlocutory appeal of the trial court's order granting the motion for discovery pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.  Interpreting the Rule 9 appeal as a common law writ of certiorari, this court granted review.  Following this court's order accepting the Rule 9 appeal as a writ of certiorari, the Cotes filed a petition for a writ of certiorari with the Tennessee Supreme Court, which was denied.  In this appeal, Dr. Elkins and the State raise largely the same issues: (1) whether this appeal should be construed as a petition for a common law writ of certiorari pursuant to Tennessee Code Annotated section 27-8-101 or as a petition for a statutory writ of certiorari pursuant to Tennessee Code Annotated section 27-8-102, or both; and (2) whether the trial court erred by ordering Dr. Elkins's personal records to be disclosed for an in camera inspection.  Because the Cotes failed to make a plausible showing that the requested information contained material evidence that was favorable to their defense, we reverse the trial court's order permitting an in camera review of the records and remand the case.

---

[1]The indictment is not included in the record.  We are not clear on the precise offense with which the Cotes have been charged and glean this information from comments made by the parties within the transcript and the trial court order.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed, Case Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Edward C. Miller, Public Defender, Dandridge, Tennessee, for the Defendant-Appellee, John Cote.

Ronald C. Newcomb, Knoxville, Tennessee, for the Defendant-Appellee, Sarah Cote.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; James B. Dunn, District Attorney General; and Steven R. Hawkins, Assistant District Attorney General, for the Appellee, State of Tennessee.

James A. H. Bell, Knoxville, Tennessee, for the Appellant, Sandra Elkins, M.D.

**OPINION**

**Background**. The information provided within the record is extremely limited. It shows that John Cote filed a "Specific Motion for Discovery/Brady Request" with the trial court. The motion requested the trial court to order that the State disclose "any and all information that could [a]ffect the reliability of pathological findings and the reliability of testimony of Dr. Sandra Elkins. . . ." The motion sought specific records that are listed below in the trial court's discovery order. In support of his motion, John Cote alleged the following:

1. That, in preparation for trial in State v. John Blair, Sevier Criminal [Court], in March of 2007 counsel was advised that Dr. Elkins was observed to be "self[-]medicated" while giving testimony in a trial in Knox County.

2. That Dr. Elkins was most uncooperative with defense counsel during his preparation of the above referenced case ignoring phone calls and requests from defense counsel and his consultants.

3. That Dr. Elkins appeared to be heavily medicated during her testimony in March 2007 in the Sevier County trial.

4. That on or about January 24, 2008 Dr. Elkins stepped down from her post as Knox County medical examiner citing [a] stress[-]induced illness that was

-2-

the result of her "whistle[]blowing" regarding Knox County taxpayers money being utilized for pathology work including autopsies from other counties. (see attached Knox [News] Sentinel article)

5. That it is widely believed that Dr. Elkins took leave due to substance abuse problems and/or mental illness.

6. That in the early morning hours of February 18, 2008 law officers went to the home of Dr. Elkins to check on her welfare due to a complaint by Larry Vineyard that she had threatened co-workers with bodily harm and that she may be suicidal. The responding officers reported that they found Dr. Elkins looking under her bed and she told them she was looking for her gun so she could shoot the officer in the back of the head. Dr. Elkins was handcuffed and taken to UT Hospital for a mental evaluation. (See attached police report)

7. Dr. Elkins has previously admitted abusing drugs she improperly prescribed for herself.

8. That Dr. Elkins performed the autopsy in this case and the pathology in this case is critical in that the autopsy alleges [the victim's] cause of death as a lethal dosage of morphine.

A January 25, 2008 newspaper article from the Knoxville News Sentinel was appended to John Cote's motion. The article stated that Dr. Elkins "has temporarily stepped down from her post as Knox County medical examiner, taking leave for an undisclosed medical condition." Dr. Elkins's departure came after her "two-year campaign to expose what she alleges is the improper use of county employees for forensic work done on behalf of University Pathologists in death investigations outside of Knox County." Dr. Elkins's complaints reportedly led to a comprehensive audit of the Regional Forensic Center. Dr. Elkins claimed she was fired after her refusal to keep quiet about the alleged misconduct. The article also stated that the resulting stress from this incident caused her to seek medical treatment. At the time of her appointment as medical examiner, Dr. Elkins confirmed that in 1995 she received treatment for the misuse of stimulant diet pills that she prescribed for herself.

Also appended to the motion was a police report dated February 18, 2008. The report indicated that Larry Vineyard had police officers check on the welfare of his supervisor, Dr. Elkins. The report contained the following information:

Vineyard advised Elkins has some mental issues and has made comments that she would kill herself and threatened the lives of a couple co-workers. Vineyard advised that Elkins may be in possession of a firearm.

Officers arrived at the residence and Vineyard, who was in possession of [a] key to Elkins'[s] condo, said he would go in and make contact with her and try to take the gun and talk Elkins into going to the hospital for a mental evaluation.

Vineyard along with the UT hospital security supervisor, Dickie Hogan[,] made entry into Elkins['s] Condo and confronted her. While inside the apartment Elkins was looking under her bed and other objects. Elkins told Officer Smith she was trying to find her gun to shoot him in the back of the head. Elkins was restrained and taken to UT hospital for a mental evaluation. While en[]route to the hospital, Elkins told Officer Smith that if she was uncuffed she would shoot him.

Dr. Elkins filed a response to John Cote's motion for discovery and Brady material. Dr. Elkins argued she was not required to disclose the requested records because: (1) the State was not in possession of the records; (2) the State informed Dr. Elkins that it did not intend to call her as a witness at trial; (3) the requested records were protected from disclosure by the federal Health Insurance Portability and Accountability Act (HIPAA); and (4) Dr. Elkins was not personally in possession of the records.

A hearing was held to address John Cote's motion for discovery and Brady material. See Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963). Sarah Cote joined in her co-defendant's motion. The State told the trial court that it was not in possession of the requested records. The State also said it would not call Dr. Elkins as a witness. Instead, the State intended to call two witnesses who were present during the autopsy to testify. The State also asserted the current medical examiner for Knox County independently examined the victim's liver and brain and would testify regarding her findings and conclusions at trial. Counsel for Dr. Elkins said his client was currently hospitalized in a facility outside of Tennessee. No proof was offered by any of the parties at this hearing.

Based on the above arguments, the trial court issued a "Discovery Order," which stated:

Dr. Sandra Elkins performed the autopsy in this case and cause of death is an issue in the case. The court realizes that the public interest in maintaining the privacy of the requested records is strong; however, the defendant's Due

-4-

Process Rights under the Fourteenth Amendment to the United States Constitution outweigh any and all competing interest. <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39 (1987). The Court finds that the requested records are potentially relevant to the defense in this case and hereby orders the following records lodged with the clerk of the court for an in-camera [sic] inspection by the Court who will determine whether the records may be relevant to the trial of this cause.

The listed agencies as well as Dr. Elkins or her Attorney shall lodge the records with the clerk of the court within 30 days of their receipt of this order.

1. Any record of treatment for narcotic or other drug abuse by Dr. Sandra Elkins from 8-25-06 to 8-25-08. (Said records to be disclosed by the medical providers of Dr. Elkins, which names are to be furnished by Dr. Elkins'[s] counsel.)

2. Prescription records for Dr. Sandra Elkins from 8-25-06 to 8-25-07. (Said records to be disclosed by said providers, which names shall be provided by Dr. Elkins.)

3. Employment records of Dr. Sandra Elkins from Knox County Medical Examiner's office, University Pathologist P.C. and University of Tennessee Medical Hospital who were unrepresented at said hearing.

4. Mental health records of Dr. Sandra Elkins from 8-25-06 through the current date. (It was represented to the court that Dr. Elkins is currently in an unnamed treatment facility. Counsel for Dr. Elkins shall disclose the name and location of said facility so that said facility can be served with a copy of this order).

5. Complete record of mental evaluation of Dr. Sandra Elkins at University of Tennessee Hospital on or about February 18, 2008.

6. Any reports or complaints on file with the Tennessee Board of Medical Examiners, [who] was likewise unrepresented at said hearing.

Dr. Elkins subsequently filed with the trial court a motion to reconsider the discovery order. She reiterated that she was not a party to the criminal proceedings and would not be called as a State's witness. She also objected on privacy and due process grounds. Additionally, counsel for Dr. Elkins claimed that compliance with the discovery order would

require the disclosure of confidential information in violation of Rule 1.6 of the Tennessee Rules of Professional Conduct. In response, the Cotes filed a "Motion to Compel Compliance with Discovery [Order]." As an interested or affected party, the Department of Health filed a motion to quash the discovery order. The Department of Health alternatively sought a protective order "limiting the scope of the discovery order to direct the production of only the public record in the custody of the Department of Health, and/or providing for the filing of the requested documents under seal without becoming public record."[2]

Another hearing was held to address Dr. Elkins's motion to reconsider. The trial court denied the motion. At the hearing, Dr. Elkins's attorney made an oral application for an interlocutory appeal. In its "Order and Memorandum Opinion," the trial court ordered a stay of all proceedings at the trial court level. The trial court found that the State did not possess the requested records, concluding that the records might be in possession of third-party medical providers and possibly Dr. Elkins. Dr. Elkins then filed a "Written Motion for Interlocutory Appeal," which was granted by the trial court.

Dr. Elkins's appeal originally came before this court as an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. On January 14, 2009, this Court interpreted Dr. Elkins's Rule 9 appeal as a writ of certiorari. In that order, this court agreed with the Cotes and determined that a non-party cannot pursue an interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. Instead, this court treated the Rule 9 appeal as a petition for a common law writ of certiorari. On January 20, 2009, John and Sarah Cote filed a petition for writ of certiorari with the Tennessee Supreme Court which was denied, alleging that this Court improperly treated Dr. Elkins's Rule 9 application as a petition for writ of certiorari and that Dr. Elkins failed to allege that the trial court was without jurisdiction to issue the discovery order.

In their petition to the Tennessee Supreme Court, citing Hewgley v. Trice, 340 S.W.2d 918 (Tenn. 1960), the Cotes argued that "the writ of certiorari is not available to correct a lower courts [sic] interlocutory order which is within the jurisdiction of the court and merely an erroneous exercise of that jurisdiction." The Cotes insisted that Dr. Elkins made "no allegations that the trial court acted illegally or outside of its jurisdiction." Citing Ezell v. Holloway, 61 Tenn. 15 (Tenn. 1872) and Baker v. Penecost, 106 S.W.2d 220 (Tenn. 1937), the Cotes further "question[ed] whether a non-party to a criminal action may seek a writ of certiorari." In response, Dr. Elkins maintained that the "trial court's order was far beyond the jurisdiction of that court" because it "ordered a private citizen whose only connection to the lawsuit [was] that [she] performed the autopsy of the alleged victim, and [her] private

---

[2]The trial court did not directly address nor does the record contain an order denying the Department of Health's motion to quash the subpoena.

counsel to gather, release, and publicly disclose [her] personal medical, employment, business, and other records."

On February 5, 2009, Dr. Sandra Elkins filed a "Motion to Amend Order" requesting this court to treat her Rule 9 appeal as both a common law and statutory writ of certiorari pursuant to Tennessee Code Annotated sections 27-8-101 and 27-1-102. On February 24, 2009, this court filed an order allowing the parties to provide additional briefing or oral argument on this issue and deferred to this panel regarding the resolution of the issue. Neither party addressed this issue at oral argument or provided additional briefing on this issue following the Tennessee Supreme Court's denial of certiorari.

**Standard of Review**. In order to determine our standard of review, we must first resolve whether Dr. Elkins's Rule 9 application for interlocutory appeal should be construed as a common law writ of certiorari, a statutory writ of certiorari, or both. This court's January 14, 2009 order interpreting Dr. Elkins's interlocutory appeal as a common law writ of certiorari stated:

> In our considered view, the nature of these claims makes the case an appropriate one for immediate review of the trial court's actions surrounding its authority to issue and mandate compliance with the challenged discovery order through a writ of certiorari. See Tenn. Code Ann. § 27-8-101 (1980); State v. Leath, 977 S.W.2d 132, 135 (Tenn. Crim. App. 1998) (common law writ available when inferior tribunal "has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy").

On appeal, Dr. Elkins requests this court to amend the order so that her interlocutory appeal is also construed as a statutory writ under section 27-8-102. The Cotes failed to provide any argument regarding this issue in their briefs to this court.

The Tennessee Supreme Court addressed the difference between common law and statutory writs of certiorari in State v. Lane, 254 S.W.3d 349, 354 n.4 (Tenn. 2008). The court stated that the primary difference between the two writs is the scope of review employed by the courts. Id. In particular, the Court noted that a statutory writ "generally allows for a trial de novo." Id. (citing Cooper v. Williamson County Bd. of Educ., 746 S.W.2d 176, 179 (Tenn. 1987)). Because this court does not conduct trials de novo, it reviewed the defendant's appeal as a common law writ. Id. In consideration of Lane and the explicit language of this court's previous order, we conclude that Dr. Elkins's appeal should be reviewed only as a common law writ of certiorari.

The standard of review for a common law writ of certiorari was set forth in <u>Robinson v. Clement</u>, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2001):

> The scope of review under a common-law writ of certiorari is extremely limited. Courts may not (1) inquire into the intrinsic correctness of the lower tribunal's decision, <u>Arnold v. Tennessee Bd. of Paroles</u>, 956 S.W.2d 478, 480 (Tenn. 1997); <u>Powell v. Parole Eligibility Review Bd.</u>, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994), (2) reweigh the evidence, <u>Watts v. Civil Serv. Bd. for Columbia</u>, 606 S.W.2d 274, 277 (Tenn. 1980); <u>Hoover, Inc. v. Metropolitan Bd. of Zoning Appeals</u>, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996), or (3) substitute their judgment for that of the lower tribunal. <u>421 Corp. v. Metropolitan Gov't</u>, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000). Rather, the writ permits the courts to examine the lower tribunal's decision to determine whether the tribunal exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily. <u>Turner v. Tennessee Bd. of Paroles</u>, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999); <u>Daniels v. Traughber</u>, 984 S.W.2d 918, 924 (Tenn. Ct. App. 1998).

In <u>Lane</u>, the Tennessee Supreme Court further defined when relief should be granted under a common law writ of certiorari:

> This Court has previously held that a common-law writ of certiorari is appropriate to correct "(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion." <u>Willis [v. Tennessee Dept. of Correction]</u>, 113 S.W.3d [706,] 712 [(Tenn. 2003)] (citing <u>State v. Willoughby</u>, 594 S.W.2d 388, 392 (Tenn. 1980)).

<u>Lane</u>, 254 S.W.3d at 355. Accordingly, we review the trial court's order under the standard provided by the above principles and authority.

Pre-trial discovery is subject to the discretion of the trial court, and therefore these decisions will be reviewed under an abuse of discretion standard. <u>Benton v. Snyder</u>, 825 S.W.2d 409, 416 (Tenn. 1992) (citing <u>Payne v. Ramsey</u>, 591 S.W.2d 434, 436 (Tenn. 1979)). "A trial court abuses its discretion whenever it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" <u>Id.</u> The trial court in this case found that it had legal authority, based upon its understanding of <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 107 S. Ct. 989 (1987), to enter an order requiring the release of information protected by law from disclosure. Therefore, we

must determine whether the trial court exceeded its authority by permitting an in camera review of a private, non-party individual's confidential records.

A criminal defendant is guaranteed due process under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 8 of the Tennessee Constitution.[3] Tennessee courts have not yet provided a framework to apply when a privilege derived from common law, statute, or the Constitution must yield to the due process rights of a criminal defendant.[4] In Pennsylvania v. Ritchie, the seminal case regarding this issue, the United States Supreme Court concluded that claims based upon the inability to obtain pre-trial information should be analyzed under the Due Process Clause of the Fourteenth Amendment. 480 U.S. at 56, 107 S. Ct. at 1001 (plurality opinion).[5] In Ritchie, the

---

[3]The Sixth Amendment to the United States Constitution provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

The Fourteenth Amendment to the United States Constitution provides in pertinent part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . . .

Art. I, Sec.8 of the Tennessee Constitution provides:

That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

[4]We acknowledge State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992), wherein the Tennessee Supreme Court held that the trial court should have conducted an in camera inspection because the psychiatric records of a witness were relevant; however, upon review of the records, the Court found the failure to do so was harmless error. Middlebrooks is distinguishable from the instant case because the records were requested during trial and our Supreme Court analyzed the issue under the confrontation clause of the Sixth Amendment.

[5] In Ritchie, a plurality opinion by the Supreme Court, Justice Blackmun, in a concurring opinion,

(continued...)

defendant was charged with several offenses related to the sexual abuse of his daughter. Id. at 43, 107 S. Ct. at 994. The defendant sought records from the Children and Youth Services (CYS), a state protective service agency that investigated the case. Id. The CYS claimed it did not have to comply with the defendant's subpoena because the records were protected by state law. Id. According to Pennsylvania state law, records gathered during a CYS investigation were confidential, subject to several exceptions. One exception was that the CYS had to turn over records to a court of competent jurisdiction pursuant to a court order. Id. at 43-44, 107 S. Ct. at 994.

In Ritchie, the Court stated, "Although we recognize that the public interest in protecting this type of sensitive information is strong, we do not agree that this interest necessarily prevents disclosure in all circumstances." Id. It compared state statutes which provide an absolute shield from disclosure to qualified state statutes which provide that the requested information could be disclosed in certain circumstances, including when directed by court order. Because the Pennsylvania Legislature contemplated some use of CYS's records in judicial proceedings, the Court concluded that the statute did not prevent all disclosure in criminal prosecutions. Id. at 57-58, 107 S. Ct. at 1001-02. The Court stated:

> In the absence of any apparent state policy to the contrary, we therefore have no reason to believe that relevant information would not be disclosed when a court of competent jurisdiction determines that the information is "material" to the defense of the accused.

Significantly, "[t]he Supreme Court expressed no opinion on whether the result would be different if the statute had protected the agency files from disclosure to anyone, including law enforcement and judicial personnel." Id. at 57 n.14, 107 S. Ct. at 1002. In addition, Ritchie did not directly address the threshold burden a criminal defendant must show in order to obtain an in camera review of the requested information by the trial court. However, the Court did emphasize that a defendant must establish that the requested information is material prior to obtaining an in camera review:

> Ritchie, of course, may not require the trial court to search through the CYS file without first establishing a basis for his claim that it contains material evidence. See United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.

---

[5](...continued)
disagreed with the Court's opinion that the Confrontation Clause had no applicability to pre-trial discovery. Ritchie, 480 U.S. at 61, 107 S. Ct. at 1003. He agreed with four other justices, however, that the in camera review of CYS records adequately addressed the defendant's Sixth Amendment rights. Id. at 65, 107 S. Ct. at 1005.

Ct. 3440, 3446, 73 L. Ed.2d 1193 (1982) ("He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense"). Although the obligation to disclose exculpatory material does not depend on the presence of a specific request, we note that the degree of specificity of Ritchie's request may have a bearing on the trial court's assessment on remand of the materiality of the nondisclosure. See United States v. Bagley, 473 U.S. 667, 682-683, 105 S. Ct. 3375, 3383-3384, 87 L. Ed.2d 481 (1985) (opinion of Blackmun, J.).

Id. at 58 n.15, 107 S. Ct. at 1002.

In an unpublished decision addressing post-conviction issues, the Sixth Circuit reiterated the rule in Ritchie:

The clearly established "rule" of Ritchie, . . . is that, given a privilege . . . a defendant is "entitled to have a [government social services] file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial," but only if the defendant has "establish[ed] a basis for his claim that it contains material evidence," e.g., by making "some plausible showing of how [the] testimony would have been both material and favorable to [the] defense."

Ray Brian Renusch v. Mary Berghuis, No. 01-2373, 2003 WL 22128709, at *8 (6th Cir. Sept. 12, 2003) (quoting Ritchie, 480 U.S. at 58 n.15, 107 S. Ct. at 1002).

In Ray Brian Renusch, the court notes that it is unclear whether "the Supreme Court in Ritchie required state courts to use the 'plausible showing' standard to determine whether a defendant has established 'a basis for his claim.'" Id. Although Ritchie provides "that a defendant cannot obtain an in camera review without 'first establishing a basis for his claim that it contains material evidence,' the Court did not directly state what that standard should be, and the words 'plausible showing' appear only in the Court's parenthetical quote from another case." Id. at n.6 (quoting Ritchie, 480 U.S. at 58 n.15, 107 S. Ct. at 1002). As a result, state and federal courts have applied various standards of review for determining the threshold burden a defendant must show before obtaining an in camera review of the records.

For an exhaustive review of the many different interpretations of the appropriate standard of review to apply, we look to People v. Stanaway, a consolidation of two cases by the Michigan Supreme Court which addressed a state psychotherapist privilege. 521 N.W.2d 557, 571 n. 28 & 29 (Mich. 1994); see also Clifford S. Fishman, DEFENSE ACCESS TO A PROSECUTION WITNESS'S PSYCHOTHERAPY OR COUNSELING RECORDS, 86 Or. L. Rev.

1, 37 (2007) (discussing the various approaches taken by courts across the country when addressing a defendant's access to a prosecution witness's protected information). In Stanaway, the Michigan Supreme Court reviewed in detail how other jurisdictions "balance the defendant's constitutional right to a fair trial with the complainant's interest in confidential therapy." The court in Stanaway joined many other jurisdictions and ultimately concluded that a defendant is entitled to in camera review of privileged records if he "establish[ed] a reasonable probability that the privileged records are likely to contain material information necessary to his defense . . ." Id. at 561-62. Writing separately, however, Justice Boyle agreed with the conclusion reached by the majority but explained that the reasonable probability standard applied by the majority "erects a higher initial barrier to in camera review than that articulated by the United States Supreme Court [in Ritchie]." Id. at 587.

In United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446 (1982), relied upon by Justice Boyle, the Supreme Court addressed the showing required by a defendant attempting to demonstrate a violation of compulsory process after the government deports possible defense witnesses who have not been previously interviewed by defense counsel. Valenzuela-Bernal requires "at least [] some plausible showing of how [the deportees'] testimony would have been both material and favorable to his defense." Id. at 867, 102 S.Ct. at 3446. Justice Boyle explained that:

> Expanding on this requirement, the [Supreme Court] turned to "cases in what might loosely be called the area of constitutionally guaranteed access to evidence . . . ." While noting that a defendant's right of access to evidence was generally measured by the prejudicial effect of denial of such access, the Court admitted that the specificity of the materiality required should be relaxed, but not wholly dispensed with, where a defendant has had no opportunity to determine what favorable information the witness, or the evidence, might possess. In that case the defendant must show the events to which the evidence might relate, and the relevance of those events to the crime charged. This approach suggests that defendants seeking discovery of privileged information must make an initial showing of plausible materiality and favorability by demonstrating what events the information might relate to and the relevance of those events to the defendant's theory of defense "in ways not merely cumulative to the testimony of available witnesses."

Stanaway, 521 N.W.2d 557, 587 (concurrence, J. Boyle) (internal citations and footnotes omitted). Lastly, Justice Boyle pointed out, "a lesser evidentiary showing is needed to trigger in camera review than is required ultimately to overcome the privilege." Id. (quoting United States v. Zolin, 491 U.S. 554, 572, 109 S.Ct. 2619 (1989)).

After a thorough review of the above authority, we conclude that the Cotes have failed to meet the threshold burden of proof required under Ritchie in order to obtain an in camera review of the requested information. We further conclude that the standard of review to be applied when a defendant seeks information protected by privilege is upon a plausible showing that such information was material and favorable to the defense. By establishing this preliminary evidentiary showing, we do not suggest that defendants are required to prove that the requested information exists or the precise nature of the records sought. We merely emphasize, as many other jurisdictions have, that more than conjecture and speculation is necessary to obtain in camera review of information protected by privilege.

In this case, the record before us is devoid of any proof. Although the allegations contained within the Cotes' motion "may" in some way be helpful to the defense, they are not a substitute for the burden of proof required under Ritchie. See People v. Turley, 870 P.2d 498 (Colo. Ct. App. 1993) (the defendant failed to make a sufficient preliminary showing to warrant in camera review when he alleged that the victim's mental health records were related to her general credibility and reliability). In addition, even though the cause of the victim's death appears to be a contested issue, the Cotes did not provide any argument to the trial court, nor to this court on review, which specifically shows how the requested information is material and favorable to the defense. The fact that the requested information may affect Dr. Elkins's credibility is also not persuasive. If we were to hold that the Cotes were entitled to the requested records based solely on their credibility argument, then the privilege would be abrogated in virtually every criminal case. See People v. Foggy, 521 N.E.2d 86 (Ill. 1988). The Cotes have failed to make a plausible showing, the minimum showing required under Ritchie, that the requested information contains evidence that is material and favorable to their defense.

The documents appended to the Cotes' motion, the newspaper article and the police report, are insufficient alone to satisfy this burden because there was no proof establishing their content or authenticity. There was also no showing how, even if the allegations within the supporting documents were true, were material and favorable to the defense. In the event the allegations are supported by actual proof that establishes a plausible showing of how the requested information is both material and favorable to the defense, the trial court is permitted to conduct an in camera review of the requested information unless it is absolutely protected by state and federal law.[6] Consequently, a review of the applicable Tennessee authority governing the requested information is necessary to determine whether it is absolutely protected by law or is qualified by certain exceptions which permit its disclosure.

_____

[6]If the Cotes are successful upon remand in obtaining in camera review, the trial court is instructed to make a separate sealed record of the requested records to be retained to facilitate future appellate review of the in camera decision.

Without addressing the contours of the Tennessee statutes governing the various records which were ordered to be disclosed, Dr. Elkins insists that they are absolutely protected by federal and state law. In a footnote in her brief, Dr. Elkins relied upon the motion to quash filed by the Department of Health[7] and explained that she "intentionally" limited her argument because the trial court "ordered [her] to waive her privacy rights – and then personally provide the records to the court." Dr. Elkins further argues, that "[u]nlike Ritchie, the trial court has ordered Dr. Elkins herself to waive her privacy rights and obtain the records herself and at her own expense." We are not persuaded by Dr. Elkins's argument that an analysis of the statutes governing the records that were requested is unnecessary under the Department of Health's theory or because the trial court ordered a private party to personally obtain the records. Thus, we now turn to each section of the trial court's order to determine whether the information sought is absolutely protected by law from disclosure.

**A. Personal Medical Records**. The trial court's order broadly directed the disclosure of "any record of treatment for narcotic or other drug abuse by Dr. Sandra Elkins" from August 25, 2006, to August 25, 2008, a two-year period. At the onset, we note that the autopsy in this case occurred on August 25, 2007. Although the trial court order requests records covering a period of two years, the transcript shows the Cotes requested "as far back as at least six months prior to and leading up to the time of the autopsy" for these records. In any case, we conclude that a period of two years was not supported by the record and over-broad.

---

[7]The Department of Health urged the trial court to quash the discovery motion, limit its scope, or place the contents of the requested information under seal. The Department of Health averred that "unless and until the Department of Health determines to file a notice of charges against a health care practitioner, complaints that it receives against such practitioner and its investigations thereof are confidential." The motion referred to Tennessee Code Annotated section 63-1-117, which provides:

> (b)(1) Allegations against a practitioner of the healing arts and the various branches thereof, compiled pursuant to an investigation conducted by the division, are public information upon the filing of notice of charges.
>
> (2) The identifying information of a complainant, of any witness who requests anonymity, of a patient, and of medical records, shall remain confidential until introduced in the proceedings.
>
> (3) This section does not modify or limit the pre hearing discovery provisions set forth in the Uniform Administrative Procedure Act, compiled in title 4, chapter 5, part 3.

The Department of Health reasoned that because a "notice of charges" had not been filed against Dr. Elkins, the requested information should remain confidential.

The trial court further ordered disclosure of any "prescription records for Dr. Sandra Elkins" from August 25, 2006, to August 25, 2007, a one-year period. The trial court ordered the medical providers of Dr. Elkins, which were not named, to provide these records. The trial court further ordered the names of the medical providers to be furnished by Dr. Elkins or through her counsel.

We begin by recognizing that patients "have a constitutionally protected interest in avoiding the disclosure of private, personal information." McNiel v. Cooper, 241 S.W.3d 886, 898 (Tenn. Ct. App. 2007) (citing Whalen v. Roe, 429 U.S. 589, 599-600, 97 S. Ct. 869, 876 (1977)). In addition, a patient's medical records "fall within the sphere of constitutionally protected private information". Id. (citing In re Search Warrant (Sealed), 810 F.2d 67, 71 (3d Cir. 1987); Dr. K. v. State Bd. of Physician Quality Assurance, 632 A.2d 453, 459 (Md. Ct. Spec. App. 1993)). Although the common law of Tennessee does not recognize the existence of a testimonial privilege between a physician and patient, see Quarles v. Sutherland, 389 S.W.2d 249, 252 (Tenn. 1965), our legislature has enacted several statutes that expressly require a physician and others to keep a patient's medical records and identifying information confidential. See T.C.A. § 63-2-101(b)(1) (Supp. 2009) ("Except as otherwise provided by law, such patient's medical records shall not constitute public records, and nothing contained in this part shall be deemed to impair any privilege of confidentiality conferred by law on patients, their personal representatives or heirs."); see id. § 68-11-1501 to -1503 (Supp. 2009) ("the Patient's Privacy Protection Act of 1996") ("Every patient entering and receiving care at a health care facility licensed by the board for licensing health care facilities has the expectation of and right to privacy for care received at such facility."); see also Givens v. Mullikin ex rel. Estate of McElwaney, 75 S.W.3d 383, 407-08 (Tenn. 2002) (recognizing the existence of an implied covenant of confidentiality between physicians and their patients).

Each of the above Tennessee statutes, however, provides for the disclosure of medical records when in response to a subpoena issued by a court of competent jurisdiction. See T.C.A. § 63-2-101(b)(1) (Supp. 2009) ("Nothing in this subsection (b) shall be construed as prohibiting a patient's medical records from being subpoenaed by a court of competent jurisdiction."); see id. § 68-11-1505 (2006) ("Nothing in this part shall be construed as prohibiting the information made confidential by the provisions of this part from being subject to the subpoena of a court of competent jurisdiction."); see also Alsip v. Johnson City Medical Center, 197 S.W.3d 722, 726 (Tenn. 2006) (recognizing that "the covenant of confidentiality is not absolute and can be voided when its enforcement would compromise the needs of society").

Although civil in nature, we are also guided by the analysis of our high court in Alsip. Alsip, 197 S.W.3d at 723. In Alsip, a medical malpractice case, the Tennessee Supreme

Court held that ex parte communications between defense counsel and the decedent's non-party treating physicians violated the implied covenant of confidentiality that exists between physicians and patients. Id. The court also held that public policy does not require the voidance of this covenant. Id. In doing so, the court weighed "society's legitimate desire for medical confidentiality against medical malpractice defendants' need for full disclosure of plaintiffs' relevant health information." Id. at 727. The court noted that "'the confidential nature of the physician-patient relationship remains even though medical information is . . . subject to discovery' because the plaintiff's contractual right to medical confidentiality remains in all his health information not relevant to the malpractice lawsuit." Id. at 728 (quoting Crist v. Moffatt, 389 S.E.2d 41, 46 (N.C. 1990)). It ultimately determined that ex parte communications between defense counsel and the decedent's non-party treating physician were unnecessary because formal methods of discovery expressly authorized by Rule 26 of the Tennessee Rules of Civil Procedure supplied the defendant a sufficient way of obtaining the plaintiff's medical records. Id. at 729-30.

Dr. Elkins further argues that her records are protected by federal law. We agree that the information requested by the Cotes constitutes "protected health information,"[8] as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").[9] This is important because HIPAA's provisions expressly preempt state law unless the state law relates to the privacy of individually identifiable health information and is more stringent than HIPAA's requirements. 45 CFR § 160.203(b); see also Law v. Zuckerman, 307 F. Supp. 2d 705, 708-09 (D. Md. 2004).

> The key component in analyzing HIPAA's "more stringent" requirement is the ability of the patient to withhold permission and to effectively block disclosure. HIPAA's permissive disclosure requirements give each patient more control over the dissemination of their medical records

---

[8] 45 CFR § 160.103 defines "protected health information" as "individually identifiable health information." This statute defines "individually identifiable health information" as health information that:

> is created or received by a health care provider, health plan, employer, or health care clearinghouse; and relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) that identifies the individual; or (ii) with respect to which there is a reasonable basis to believe the information can be used to identify the individual.

[9] 42 U.S.C. §§ 1320a, -1320d-8 (2008).

than [Maryland State Law], while [Maryland State Law] sacrifices the patient's control of their private health information in order to expedite malpractice litigation. If state law can force disclosure without a court order, or the patient's consent, it is not "more stringent" than the HIPAA regulations.

Law v. Zuckerman, 307 F. Supp. 2d at 711; see also S.C. Med. Ass'n. v. Thompson, 327 F.3d 346, 349 (4th Cir. 2003), cert. denied 540 U.S. 981, 124 S. Ct. 464 (2003).

However, in this context, we need not determine whether HIPPA preempts Tennessee state law because HIPAA "clearly anticipates disclosures of protected health information pursuant to a court order[.]" Holmes v. Nightingale, 158 P. 3d 1039, 1041 (Okla. 2007); see also In re Grand Jury Proceedings, 450 F. Supp. 2d 115, 118 (D. Me. 2006) (wherein hospital was required to turn over medical records in response to federal grand jury subpoena regardless of whether state law is more stringent); U.S. v. Zamora, 408 F. Supp. 2d 295, 298 (S.D. Tex. 2006) ("HIPAA was passed to ensure an individual's right to privacy over medical records, it was not intended to be a means for evading prosecution in criminal proceedings[.]").[10] We conclude that the public policy concerns surrounding confidentiality do not outweigh a criminal defendant's right to due process. Upon the defendants' threshold showing of plausibility that the information sought is material and favorable to their defense, the trial court is vested with the authority to order an in camera review.

**B. Mental Health Records**. The discovery order broadly directs Dr. Elkins, her attorney, and specified agencies to lodge various records with the clerk of the trial court, some of which concern the mental health of Dr. Elkins.

Tennessee Code Annotated section 33-3-105 addresses the disclosure of confidential mental health records and states in relevant part:

Information that is confidential under § 33-3-103 may be disclosed without consent of the service recipient if:

---

[10]45 CFR § 164.512(e) sets forth the standards for disclosure of protected health information pursuant to an order in judicial and administrative proceedings. It provides, in pertinent part:

(e) Standard: Disclosures for judicial and administrative proceedings.

(1) Permitted Disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information authorized by such order.

(3) As a court orders, after a hearing, upon its determination that disclosure is necessary for the conduct of proceedings before it and that failure to make the disclosure would be contrary to public interest or to the detriment of a party to the proceedings[.]

The information required for disclosure is defined under section 33-3-103, which states:

Confidentiality of mental health records.

All applications, certificates, records, reports, legal documents, and pleadings made and all information provided or received in connection with services applied for, provided under, or regulated under this title and directly or indirectly identifying a service recipient or former service recipient shall be kept confidential and shall not be disclosed by any person except in compliance with this part.

This court addressed the applicability of Tennessee Code Annotated section 33-3-105 in State v. Fox, 733 S.W.2d 116, 118 (Tenn. Crim. App. 1987). In Fox, the defendant was charged with aggravated rape, and he sought discovery of the victim's mental health records. Id. at 117-18. The trial court directed a mental health center to submit the requested mental health records to the court for an in camera inspection. Id. at 118. On appeal, this court determined that the mental health records were not discoverable under Rule 16 of the Tennessee Rules of Criminal Procedure because the records were not in the possession, custody, or control of the State. This court reasoned that the records were in possession of a privately-owned health center that had no relationship to the State. Id. This court determined, however, that the trial court was permitted under section 33-3-105 to review the confidential records in camera and determine if they contained exculpatory evidence. Because the trial court found no exculpatory material, the records were not disclosed to the defendant. Id.

This court has repeatedly held that records governed by section 33-3-105 are subject to an in camera review. See State v. Suttles, 30 S.W.3d 252, 271 (Tenn. 2000); State v. Jeffrey R. Allen and Judge Jennings Michael Coen, No. 03C01-9708-CC-00367, 1999 WL 5173, at *3-4 (Tenn. Crim. App., at Knoxville, Jan. 8, 1999); State v. Frank Frierson, No. 01C01-9112-CC-00357, 1993 WL 273974, at *6 (Tenn. Crim. App., at Nashville, July 22, 1993, perm. app. denied (Tenn. Oct. 2, 1995); State v. Charles Austin, No. 01C01-9204CC00120, 1992 WL 389637, at *1 (Tenn. Crim. App., at Nashville, Dec. 31, 1992, perm. app. denied (Tenn. June 7, 1993). Accordingly, section 33-3-105 clearly allows

-18-

for disclosure pursuant to a subpoena by a court of competent jurisdiction; therefore, mental health records are also subject to an in camera review.[11]

      **C. <u>Employment Records</u>**. The trial court also ordered disclosure of Dr. Elkins's employment records from the Knox County Medical Examiner's office. This court addressed the disclosure of police personnel records in <u>State v. Butts</u>, 640 S.W.2d 37, 39 (Tenn. Crim. App. 1982). There, the defendant sought personnel records based on alleged complaints about the officer's past behavior. <u>Id.</u> at 38. The trial court ordered disclosure of the records to the trial court for in camera review. On appeal, this court first noted that "no Tennessee case specifically allows a criminal defendant to discover police personnel records." <u>Id.</u> at 39. Nevertheless, the court stated:

> Considering the Tennessee policy of broad and reciprocal discovery reflected in Tennessee Rules of Criminal Procedure Rule 16 and in <u>State v. Brown</u>, [552 S.W.2d 383 (Tenn. 1977)], and considering case law from other jurisdictions, we adopt the following rule: Criminal defendants may not routinely have access to police personnel records, but upon a strong showing that the personnel records might contain information material to a defendant's case, the trial court should conduct an in camera inspection of the records and release to defendant those items the court deems material to the defense.

<u>Id.</u> The court concluded that in camera review was not appropriate because the defendant "failed to demonstrate sufficient materiality to merit disclosure of police personnel records." <u>Id.</u>

      Although we are concerned with a medical examiner's employment records rather than police personnel records, we believe the analysis applied in <u>Butts</u> is appropriate to this case. As we have previously stated, the Cotes failed to provide any proof that Dr. Elkins's employment records contained information material to their cases. Unlike the plausible showing of material and favorable evidence discussed in the previous sections, the Cotes must establish "a strong showing [of evidence] that the [employment] records might contain information material to [their] case [.]" The trial court is then permitted to conduct an in camera review of Dr. Elkins's employment records.

---

[11] We acknowledge the federal statute which requires confidentiality of records concerning a patient's substance abuse or mental health treatment. 42 U.S.C. § 290dd-2(a). However, this statute is also qualified because it permits disclosure by an order of a court with competent jurisdiction after a showing of good cause as to why the information should be released. 42 U.S.C. § 290dd-2(b)(2)(C). In making a determination of whether good cause is shown, a court "shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services." <u>Id.</u>

**D. Records from the Tennessee Board of Medical Examiners**.  The trial court ordered "[a]ny reports or complaints on file with the Tennessee Board of Medical Examiners, who was likewise unrepresented at said hearing."

The Tennessee Board of Medical Examiners and the Division of Health Related Boards in the Department of Health have statutory authority to license and oversee the professional conduct of physicians practicing in Tennessee.  McNiel v. Cooper, 241 S.W.3d 886, 898 (Tenn. Ct. App. 2007).  An integral part of this authority is the power to investigate complaints against physicians once it is determined that the complaints merit further inquiry.  Id.  Tennessee Code Annotated section 63-6-214  provides the procedure for disciplinary proceedings against physicians in Tennessee and states, in pertinent part, the following:

> (h)(1) All materials, documents and other matters relating to, compiled or created pursuant to an investigation conducted by the board's investigators against any health care practitioner under the board's jurisdiction, shall be exempt from the public records act until the filing of a notice of charges.  After the filing of a notice of charges, only the information and those materials and documents upon which the charges are based are available for disclosure under the public records act;  provided, that the identifying information of the following, as well as all investigator created documents and reports, shall remain confidential at all times unless and until introduced in the proceedings:
>
> > (A) A complainant;
> > (B) Any witness who requests anonymity;
> > (C) A patient;  and
> > (D) Medical records.
>
> . . . .
>
> (i)(1) The board may utilize one (1) or more screening panels in its investigative and disciplinary process to assure that complaints filed and investigations conducted are meritorious, and to act as a mechanism for diversion, to professional peer review organizations and/or impaired professionals associations or foundations, those cases that the board, through established guidelines, deems appropriate; upon diversion, such entities shall retain the same immunity as provided by law for the board.
>
> . . . .

(3) The activities of the screening panels, and any mediation or arbitration sessions shall not be construed as meetings of an agency for purposes of the Open Meetings Act and, to the extent required by subdivision (h)(2), shall remain confidential.  The members of the screening panels, mediators and arbitrators have a deliberative privilege and the same immunity as provided by law for the board, and are not subject to deposition or subpoena to testify regarding any matter or issue raised in any contested case, criminal prosecution or civil lawsuit that may result from or be incident to cases processed before them.

We conclude that the above statute protects absolutely the materials requested from disclosure in the present case.  See People v. Foggy, 521 N.E.2d 86 (1988) and Commonwealth v. Kennedy, 604 A.2d 1036 (1992) (wherein the Illinois and Pennsylvania Supreme Courts refused to disclose records where the statutory privileges were determined to be absolute.)  The Tennessee legislature specifically exempted from disclosure "any matter or issue raised in any contested case, criminal prosecution or civil lawsuit that may result from or be incident to cases processed before them."  T.C.A. § 63-6-214(i)(3).  Accordingly, information requested from the Tennessee Board of Medical Examiners is not subject to an in camera review by the trial court.

**II.  Brady Violation and Obligation of the State**.  The State argues that the requested records were not in their possession, and therefore they were not subject to disclosure under Rule 16.  In addition, the State asserts that disclosure was not required under Rule 16 or Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), because the Cotes failed to show that the requested records were material or favorable to their defense.  In response, the Cotes claim the trial court did not abuse its discretion in ordering disclosure of the records.  They argue discovery was required under Brady because the autopsy results were essential to the State's case and their defense.  The Cotes also contend the records were discoverable under Rule 16 because they were in the State's possession, custody, or control.

A lengthy discussion regarding this issue is unnecessary because the trial court found that the requested records were not in the possession, custody, or control of the State.  Here, we are reminded:

There is no constitutional right to general discovery in a criminal case.  The State is not obliged to make an investigation or to gather evidence for the defendant. The discovery rules do not require disclosure of information not known by the State. Rule 16 permits the defendant to discover any statements made by him, his prior record, documents and tangible objects, and reports of

tests and examinations, but only to the extent that the information is in the "possession, custody, or control of the state."

State v. Schiefelbein, 230 S.W.3d 88, 147-48 (Tenn. Crim. App. 2007) (internal citations omitted). Nothing in the record shows that the Cotes identified the specific information sought or that the State was in possession of the requested information. As such, the trial court erred by ordering the State to produce the requested information.

## CONCLUSION

We conclude that the trial court erred by ordering an in camera review of the requested information absent a plausible showing that such information was material and favorable to the Cotes' defense. This case is remanded for proceedings consistent with this opinion.

_____
CAMILLE R. MCMULLEN, JUDGE